# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Leach*, 2011 IL App (1st) 090339

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD LEACH, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1–09–0339 |
| Filed<br>{Rehearing den. etc.} | May 31, 2011<br>June 28, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's convictions for second-degree murder and aggravated discharge of a firearm, the appellate court held that the trial court did not err in withdrawing its original instruction on aggravated discharge of a firearm and replacing it with a new instruction after the jury had begun deliberating, since the jury submitted a question as to whether the charge of aggravated discharge of a firearm only applied to defendant shooting in the direction of just one of two victims and the trial court responded by substituting the original instruction with  the instruction in which the name of the second victim was removed and replaced by the general term "another person" and this supplemental instruction was not an abuse of discretion, nor did it introduce a new theory of liability, especially when the identity of the victim was not an element of the offense, and further, defendant's alternative argument that the instruction expanded the class of victims to include second-degree murder victim and in doing so violated one-act, one-crime rule was rejected on the ground that defendant did not commit multiple acts against a single victim and the one-act, one-crime rule did not apply; however, the DNA analysis fee imposed on defendant was vacated where he had already submitted his DNA for analysis pursuant to an earlier felony conviction. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06–CR–27392; the Hon. Domenica A. Stephenson, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Unsinn, and Laura A. Weiler, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Sarah L. Simpson, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE CONNORS delivered the judgment of the court, with opinion. Presiding Justice Cunningham and Justice Karnezis concurred in the judgment and opinion |

**OPINION**

¶ 1 Following a jury trial, defendant Ronald Leach appeals his conviction in the circuit court of Cook County for aggravated discharge of a firearm. On appeal, defendant contends that the trial court erred by providing the jury with a new instruction in response to a jury question regarding the law that should be applied to the case. Defendant also challenges the imposition of a $200 DNA analysis fee as part of his sentence. We affirm defendant's conviction, but we vacate the DNA analysis fee.

¶ 2                                    I. BACKGROUND

¶ 3 This appeal arises out of the events surrounding the shooting death of Nicole White on November 13, 2006. On that evening, Corey Clay was selling cocaine on behalf of defendant when a customer approached Clay in a vehicle and attempted to purchase several bags of cocaine. Clay did not have enough bags left to fill the order, so he asked Nicole White, who was sitting on a porch nearby, to loan him several bags of cocaine. Nicole agreed, but when Clay gave the customer the drugs, the customer drove off without paying.

¶ 4 While Clay and Nicole were arguing about who would take the loss on the drugs, defendant approached and intervened. Defendant told Nicole that she would have to take the loss because she was not supposed to be selling anything in that area. Nicole became angry

and began arguing with defendant, and the altercation quickly became physical. Although defendant was 5 feet 7 inches and weighed 173 pounds, Nicole was 5 feet 6 inches and weighed about 251 pounds. Both defendant and Nicole struck each other, and when onlookers attempted to break up the fight, Nicole sprayed mace in defendant's face and eyes.

¶ 5    Defendant fled to his cousin's nearby apartment and Nicole went to a separate nearby apartment. At the apartment, Nicole retrieved a small knife from the kitchen. She also called her brother Anthony White and explained what had happened. At some point, Nicole left the apartment and met up with several other individuals and her brother Anthony in the vicinity of the altercation with defendant.

¶ 6    About half an hour or so after the initial altercation, defendant and his cousin approached Nicole and the individuals who were with her. The testimony at trial was somewhat unclear about the exact number of people in the area at this time, but there appear to have been at least four other people in the immediate vicinity in addition to Nicole and defendant. When defendant approached, Nicole began arguing with him again and physically attacked him. There were some discrepancies in the testimony of various witnesses about whether she struck defendant with her fists or not, or whether Nicole was holding the knife at this point. The knife was later recovered at the scene, where it was lying found on the ground next to the can of mace.

¶ 7    Nicole again produced her can of mace and sprayed it in defendant's face and eyes, and defendant backed up and put his hands over his face in order to protect himself from the spray. Defendant then removed a handgun from his jacket, pointed it at Nicole, and pulled the trigger twice. Nicole was struck in the chest by both bullets and later died of her wounds. At this point, the testimony is unclear as to the precise sequence of events, but it is clear that defendant fired his gun at least one more time with the bullet traveling toward the group of onlookers, which included Nicole's brother Anthony White. Defendant fled the scene but was apprehended a short time later.

¶ 8    Defendant was subsequently charged by indictment with first-degree murder in the death of Nicole White, and with attempted first-degree murder and aggravated discharge of a firearm for her brother Anthony White. Defendant asserted self-defense, and the case was tried before a jury. During the jury instructions conference, the parties agreed that the jury should receive a slightly modified version of the Illinois Pattern Jury Instruction for aggravated discharge of a firearm, which read as follows:

> "To sustain the charge of aggravated discharge of a firearm, the State must prove the following propositions:
>
> First: That the defendant knowingly discharged a firearm; and
>
> Second: That the defendant discharged the firearm in the direction of Anthony White."

This instruction was based on Illinois Pattern Jury Instructions, Criminal, No. 18.12 (4th ed. Supp. 2008) (hereinafter IPI Criminal 4th No. 18.12 (Supp. 2008)), with the only difference

being that the standard instruction reads "another person" rather than "Anthony White."

¶ 9     During deliberations the jury sent out a question to the court that read, "Does the Aggravated Discharge charge apply only to shooting in the direction of Anthony White?" After discussing the question with the parties, the trial court determined that the name of the victim is not a required part of the instruction on this charge. Over defendant's objection, the trial court withdrew the original instruction from the jury and replaced it with one that read "another person." The jury renewed its deliberations and returned a verdict a short time later. The jury found defendant guilty of second-degree murder for Nicole White and acquitted him of attempted first-degree murder for Anthony White, but the jury found him guilty of aggravated discharge of a firearm.

¶ 10    Following posttrial motions, the trial court sentenced defendant to consecutive sentences of 12 years' incarceration for the second-degree murder conviction and 6 years' incarceration for the aggravated discharge of a firearm conviction. The trial court also ordered defendant to submit a DNA sample for testing and to pay a $200 DNA analysis fee pursuant to section 5–4–3 of the Unified Code of Corrections (730 ILCS 5/5–4–3(j) (West 2008)). Defendant timely filed a notice of appeal, and this case is now before us. Defendant does not challenge his second-degree murder conviction on appeal.

¶ 11                              II. ANALYSIS

¶ 12    Defendant raises three issues on appeal, namely, (1) that the replacement of the jury instruction for aggravated discharge violated his right to make a closing argument, (2) that his conviction for both second-degree murder and aggravated discharge of a firearm violated the one-act, one-crime rule, and (3) that the trial court should not have imposed the $200 DNA analysis fee.

¶ 13                            A. Jury Instruction

¶ 14    Defendant's primary argument on appeal is that the trial court erred by withdrawing the original jury instruction for aggravated discharge of a firearm and replacing it with a new one after the jury had already begun deliberating. Defendant asserts that the trial court wrongly injected an entirely new theory of liability into the case against which defendant had no chance to defend himself because the case had already been submitted to the jury.

¶ 15    Jury instructions must be settled before closing arguments. See 735 ILCS 5/2–1107(c) (West 2008); Ill. S. Ct. R. 451(c) (eff. July 1, 2006). However, the jury is entitled to receive further instruction if it has a question during deliberations. See *People v. Childs*, 159 Ill. 2d 217, 228 (1994). Our supreme court has summarized how this situation should be handled as follows:

> "The general rule when a trial court is faced with a question from the jury is that the court has a duty to provide instruction to the jury when the jury has posed an explicit

question or requested clarification on a point of law arising from the facts about which there is doubt or confusion. [Citation.] Nevertheless, a trial court may exercise its discretion to refrain from answering a jury question under appropriate circumstances. [Citation.] Appropriate circumstances include when the instructions are readily understandable and sufficiently explain the relevant law, where further instructions would serve no useful purpose or would potentially mislead the jury, when the jury's inquiry involves a question of fact, or where the giving of an answer would cause the court to express an opinion that would likely direct a verdict one way or another. [Citation.] Further, the court should not submit new charges or new theories to the jury after the jury commences its deliberations." *People v. Millsap*, 189 Ill. 2d 155, 160-61 (2000).

Moreover, when a trial court decides to answer a jury's question, it must do so correctly and "must not misstate the law." *People v. Gray*, 346 Ill. App. 3d 989, 994 (2004).

¶ 16    Determining the propriety of the trial court's response to a jury question accordingly requires a two-step analysis. First, we must determine whether the trial court should have answered the jury's question. We review the trial court's decision on this point for abuse of discretion. See *Millsap*, 189 Ill. 2d at 161. Second, we must determine whether the trial court's response to the question was correct. Because this is a question of law, we review this issue *de novo*. See *Gray*, 346 Ill. App. 3d at 994.

¶ 17    Regarding the first issue, the jury in this case asked, "Does the Aggravated Discharge charge only apply to shooting in the direction of Anthony White?" This question meets all three criteria under *Millsap* for invoking the trial court's duty to respond. See *Millsap*, 189 Ill. 2d at 161. First, the jury's request was explicit because it was about a specific charge in relation to a specific fact. Second, the construction of a jury instruction is a question of law. Third, the use of the word "only" in the question implies that the jury was confused about whether the charge could apply to people other than White. Consequently, the trial court's decision to answer the jury's question was not an abuse of discretion. *Cf. Gray*, 346 Ill. App. 3d at 994.

¶ 18    The second issue is more complex. Defendant primarily relies on *Millsap*, in which the supreme court addressed a similar question to the one presented here. In that case, the defendant was prosecuted for robbery and home invasion only on a theory of direct liability. See *Millsap*, 189 Ill. 2d at 159. In response to a question from the jury, however, the trial court gave the jury a supplemental instruction on accomplice liability. See *id.* at 159-60. The supreme court held that it was error for the trial court to submit the new instruction to the jury because it introduced a new theory of liability into the case, even though the trial court's response to the jury's question was accurate and correctly stated the law. See *id.* at 165.

¶ 19    Accordingly, the dispositive question in this case is whether the trial court's supplemental instruction introduced a new theory of liability. *Millsap* does not explicitly define what constitutes a new theory, but the supreme court's holding primarily rests on the fact that the elements for principal and accomplice liability are different. In support of its holding, the supreme court observed that "the elements that the State would have had to prove to establish

defendant's guilt as an accomplice are different from those necessary to prove his guilt as a principal." *Id.* at 165. Based on the supreme court's reasoning in *Millsap*, whether the trial court's instruction constituted a new theory of liability depends on whether the elements in the new aggravated discharge instruction differed from the elements in the one that the trial court withdrew. Given that the only difference between the two instructions in this case is that the name of the alleged victim was removed and replaced with the general term "another person," the question that we must resolve is whether the specific identity of the victim is an element of the crime of aggravated discharge of a firearm.

¶ 20    Although no case has addressed this issue in the context of this particular offense, our supreme court addressed it in a similar context in *People v. Collins*, 214 Ill. 2d 206 (2005). In *Collins*, the supreme court examined the offense of reckless discharge of a firearm (720 ILCS 5/24–1.5 (West 2002)). See *Collins*, 214 Ill. 2d at 212. The supreme court held that the specific identity of an individual is not an element of reckless discharge of a firearm. See *id.* at 220. Relying on an analysis first used in *People v. De Kosta*, 132 Ill. App. 2d 691 (1971), the supreme court noted that the statute for the offense requires only that the defendant's actions endanger "an individual," rather than a specific person. See *Collins*, 214 Ill. 2d at 220-21. Even though in *Collins* the indictment named a specific person and the argument at trial had been limited to only defendant's actions in relation to that person, the supreme court found that the name of the victim was merely "surplussage" and was not a necessary element of the offense. *Id.* at 219.

¶ 21    Applying the reasoning of *Collins* to the statute at issue in this case, we find that the name of a specific victim is not an element of the offense of aggravated discharge of a firearm. Our primary goal when interpreting a statute is to "ascertain and give effect to the overall intent of the drafters" (*Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 458 (2002)), and "[t]he best evidence of legislative intent is the language of the statute" (*In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006)). Moreover, it is a well-settled canon of statutory construction that "where the same, or substantially the same, words or phrases appear in different parts of the same statute they will be given a generally accepted and consistent meaning, where the legislative intent is not clearly expressed to the contrary." *Moran v. Katsinas*, 16 Ill. 2d 169, 174 (1959).

¶ 22    Defendant was convicted of violating section 24–1.2 of the Criminal Code of 1961, which states that a person is guilty of the offense when he "[d]ischarges a firearm in the direction of *another person.*" (Emphasis added.) 720 ILCS 5/24–1.2(a)(2) (West 2008). Like the offenses at issue in *Collins* and *De Kosta*, nothing in section 24–1.2 requires that a specific person be named as the victim. Rather, the plain language of the statute requires only two elements to complete the offense, namely, that the defendant (1) knowingly or intentionally discharged a firearm (2) in the direction of another person. See 720 ILCS 5/24–1.2 (West 2008).

¶ 23    Although it is true that the offense of reckless discharge of a firearm that was at issue in *Collins* refers to "an individual" (720 ILCS 5/24–1.5 (West 2002)), while aggravated discharge of a firearm refers to "another person" (720 ILCS 5/24–1.2 (West 2008)), the terms

"individual" and "person" are effectively interchangeable. Compare Webster's Third International Dictionary 1152 (1981) (defining "individual"), with *id.* at 1686 (defining "person"). We can discern no reason that this minor difference in word choice between these two sections of the Criminal Code should compel a different result, and we therefore must construe them to have a consistent meaning. See *Moran*, 16 Ill. 2d at 174. Consequently, we hold that the specific identity of a named victim is not an essential element of aggravated discharge of a firearm.

¶ 24    When we apply our construction of the statute to the trial court's action in this case, it is readily apparent that the trial court did not introduce a new theory of liability by giving the jury a new instruction. The only difference between the two jury instructions here is that one contained the alleged victim's name but the other did not. The second instruction contained the same two elements for aggravated discharge of a firearm as the first instruction, meaning that the new instruction was not a new theory of liability. Because the victim's name is not a necessary element of the offense, the trial court's decision to remove it in order to clarify the applicable law for the jury was not error.

¶ 25    To the extent that defendant claims that the trial court's action infringed on his right to make a closing argument, we reject this contention. As the supreme court recognized in *Millsap*, a criminal defendant has a constitutional right to make a closing argument. See *Millsap*, 189 Ill. 2d at 164 (citing *Herring v. New York*, 422 U.S. 853, 857-59 (1975)). The supreme court found in *Millsap* that the defendant's right to make a closing argument had been violated because the trial court added the new theory of liability after the jury had begun deliberations. See *Millsap*, 189 Ill. 2d at 164-65.

¶ 26    Unlike *Millsap*, here the trial court did not introduce a new theory of liability after closing arguments. Although the charging instrument listed Anthony White as the victim for the aggravated discharge of a firearm offense, this language was surplussage and had no role in informing defendant of the specific charge that the State planned to prosecute him for. See *Collins*, 214 Ill. 2d at 221. Defendant was "apprised of the nature of the offense and [was] able to adequately prepare his defense" (*id.*) long before closing arguments occurred, and the trial court's action did not unexpectedly change the theory of liability of which he had already been notified. Defendant had the opportunity to fully address the theories of liability upon which he could potentially be convicted in closing arguments. Consequently, defendant's right to make a closing argument was not violated.

¶ 27                                    B. One-Act, One-Crime Rule

¶ 28    In the alternative, defendant argues that his conviction must be vacated because it violates the one-act, one-crime rule. See *People v. Artis*, 232 Ill. 2d 156, 165 (2009) (stating that multiple convictions based on a single act are improper). Defendant asserts that the revised jury instruction for aggravated discharge of a firearm expanded the class of potential victims beyond only Anthony White and allowed the jury to find that he shot in the direction of Nicole White. Defendant further argues that, because he was convicted of second-degree

murder for the death of Nicole White, the one-act, one-crime rule prohibits a simultaneous conviction for aggravated discharge of a firearm with Nicole White as the victim.

¶ 29    Defendant concedes that he failed to raise this argument in a posttrial motion, and he has therefore forfeited it on appeal. See *People v. Pryor*, 372 Ill. App. 3d 422, 434 (2007) ("It is well settled that a claim that multiple convictions were improper can be waived by failing to raise the issue before the trial court."). However, defendant asks us to review this issue under the plain-error doctrine. Under this doctrine, we may review unpreserved error only where either "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 30    The threshold step in the analysis is to determine whether an error occurred. See *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). If we find that a one-act, one-crime error occurred, then it is reversible error under the second prong of the plain-error doctrine. See *People v. Nunez*, 236 Ill. 2d 488, 493 (2010). However, the one-act, one-crime rule only applies to multiple convictions for acts against a single victim. See *People v. Grover*, 93 Ill. App. 3d 877, 881 (1981). Multiple convictions are proper when there are multiple victims. See *id.* (citing *People v. Butler*, 64 Ill. 2d 485 (1976)).

¶ 31    Defendant's argument on this issue is all but bare of citation to relevant authority and is somewhat unclear. Defendant claims that the jury's question regarding the application of the charge to Anthony White means that it was unsure about whether defendant had shot in his direction. According to defendant, this uncertainty necessarily means that the jury must have convicted him of aggravated discharge of a firearm for shooting in the direction of Nicole White. To the extent that defendant implies that the new instruction necessarily led the jury to convict him of aggravated discharge of a firearm for Nicole White in addition to second-degree murder, we reject this contention.

¶ 32    Aside from the complete lack of supporting authority for this contention, defendant's argument is unsupported by the record. The evidence showed that defendant fired at least three rounds, two of which struck Nicole White and are the basis for the second-degree murder conviction. The third round, however, did not strike Nicole White, and it is this round that the State used to support the aggravated discharge of a firearm charge. The evidence presented at trial demonstrated that the third round traveled toward Anthony White and the individuals in the group that he was standing with.

¶ 33    It is well settled that "crimes committed against separate victims constitute separate criminal acts." *Pryor*, 372 Ill. App. 3d at 434. Accordingly, even if we assume that defendant's action of firing his gun three times constitutes only a single act, the evidence shows that he committed a criminal act against at least two different victims: Nicole White and either Anthony White or one of the people who were standing with him. Defendant's contention that the jury's question unequivocally demonstrated that it *must* have found that

all three rounds were fired in the direction of Nicole White and no one else is completely speculative.

¶ 34    Because the evidence shows that defendant did not commit multiple acts against a single victim, the one-act, one-crime rule does not apply to defendant's convictions for second-degree murder and aggravated discharge of a firearm. See *Grover*, 93 Ill. App. 3d at 881. There was consequently no plain error because the one-act, one-crime rule was not violated.

¶ 35                    C. DNA Analysis Fee

¶ 36    Finally, defendant argues that the trial court improperly assessed a $200 DNA analysis fee as part of his sentence. Defendant asserts that the fee was improper because he has previously been convicted of a felony and therefore has already submitted DNA for analysis and been assessed the fee. Section 5–4–3(j) of the Unified Code of Corrections (730 ILCS 5/5–4–3(j) (West 2008)) requires that anyone convicted of a felony in Illinois must submit a blood, saliva, or tissue specimen to the Illinois State Police for analysis and must also pay an analysis fee of $200.

¶ 37    This issue is controlled by the supreme court's recent decision in *People v. Marshall*, 242 Ill. 2d 285 (2011). In *Marshall*, the supreme court held that section 5–4–3 "authorizes a trial court to order the taking, analysis and indexing of a qualifying offender's DNA, and the payment of the analysis fee only where that defendant is not currently registered in the DNA database." *Id.* at 15. Because defendant in this case has already submitted DNA and paid the fee following previous convictions, the trial court's order imposing the $200 DNA analysis fee is void. Although the State argues that defendant has forfeited this issue by failing to raise it before the trial court in a postsentencing motion, "[a] challenge to an alleged void order is not subject to forfeiture." *Id.* at 14.

¶ 38    The State also argues that it is defendant's burden to demonstrate that he has previously been convicted of a felony and was assessed and paid the DNA analysis fee following that conviction. The State argues that defendant failed to make a record on those points and that we should therefore resolve this issue against him. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). However, the record demonstrates that defendant was previously convicted of felonies in cases numbers 03 CR 2817602 and 98 CR 2393601, both in the circuit court of Cook County. Although the record does not indicate whether the fee was assessed in either of these cases, the DNA analysis and fee requirement was added by a 1997 amendment to section 5–4–3 of the Unified Code of Corrections (Pub. Act 90–130 (eff. Jan. 1, 1998) (amending 730 ILCS 5–4–3 (West 1996))). This means that the requirement was in effect when defendant was first convicted of a felony on March 25, 1999, in case number 98 CR 2393601. Because section 5–4–3 mandates that anyone convicted of a felony must submit a DNA sample and be assessed the DNA analysis fee, we presume that the circuit court imposed this requirement as part of defendant's sentence following at least one of his prior convictions. See *People v. Gaultney*, 174 Ill. 2d 410, 420 (1996) ("We ordinarily presume that the trial judge knows and follows the law unless the record indicates otherwise.").

Because the record demonstrates that defendant was convicted of at least one previous felony after section 5–4–3 became law, it is sufficient for the limited purpose of demonstrating that the fee has previously been assessed against defendant.

¶ 39                                    III. CONCLUSION

¶ 40     For the reasons stated above, we affirm defendant's conviction for aggravated discharge of a firearm. However, we vacate the portion of the circuit court's sentencing order that imposed a $200 DNA analysis fee under section 5–4–3(j) of the Unified Code of Corrections (730 ILCS 5/5–4–3(j) (West 2008)).

¶ 41     Affirmed in part and vacated in part.