# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Laabs*, 2011 IL App (3d) 090913

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MITCHELL L. LAABS, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-09-0913 |
| Filed | October 18, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for felony murder was reversed and the cause was remanded for a new trial where the trial court abused its discretion when, in response to a jury question, it instructed the jury on accountability, a new theory of guilt, after jury deliberations had begun. |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 08-CF-273; the Hon. Walter D. Braud, Judge, presiding. |
| Judgment | Reversed and remanded. |

| | |
|---|---|
| Counsel on Appeal | Susan M. Wilham, of State Appellate Defender's Office, of Springfield, for appellant. |
| | Jeff Terronez, State's Attorney, of Rock Island (Terry A. Mertel and Robert M. Hansen, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE CARTER delivered the judgment of the court, with opinion. |
| | Justices Holdridge and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1    After a jury trial, defendant, Mitchell L. Laabs, was convicted of felony murder (720 ILCS 5/9-1(a)(3) (West 2006)) and was sentenced to 50 years' imprisonment. Defendant appeals, arguing that: (1) he was denied a fair trial when the trial court instructed the jury on a new theory of guilt, accountability, in response to a jury question, after jury deliberations had begun; and (2) his sentence is excessive. We reverse defendant's conviction and sentence and remand the case for a new trial.

¶ 2                                FACTS

¶ 3    In March of 2008, defendant was charged as a principal with felony murder for the May 31, 2007, shooting death of Darrell Little. Little was shot during a robbery attempt that involved defendant and four other subjects (the four accomplices). The State's theory of the case was that defendant acted as a principal in the murder of Little and that defendant was the person who actually shot Little. The charging instrument alleged that defendant, without lawful justification and while attempting a forcible felony, robbery, shot Darrell Little in the abdomen with a semiautomatic handgun and thereby caused the death of Little.

¶ 4    Defendant's case proceeded to a jury trial in July of 2009. The charging instrument remained the same, and defendant was still charged as a principal–the person who had actually shot Little during the course of an attempted robbery. Prior to trial, as part of its trial strategy, the State flipped the four accomplices against defendant. In exchange for their cooperation and agreement to testify against defendant, the accomplices were given favorable plea deals and were charged with, and pled guilty to, attempted armed robbery, instead of felony murder.

¶ 5    Although defendant was not charged under a theory of accountability, the issue came up several times during defendant's trial. The first such instance was during opening statements.

As part of his opening statement, the prosecutor told the jury:

> "At the end of the day, you are going to be tasked with the duty of taking all of the evidence that you hear, combine it together to help you decide whether or not you're believing people. I'll conclude this for you. There will be no doubt in anybody's mind at the close of all the evidence that some bad decisions were made. There should be no doubt at the close of all the evidence that Darrell Little was a victim of a felony murder. The only question I think that you will be left with at the end of the day is going to be who is responsible, who is criminally culpable for killing Darrell Little. Now, maybe you are going to find that the four boys [the four accomplices] that testify are criminally culpable. Maybe you will find that, but you are not asked to decide whether or not they are guilty of First-Degree Murder. The only person that you are going to have to decide that issue on is the Defendant in the case. You will find at the close of all of the evidence and after arguments and the instructions of the law that the Defendant is guilty of First-Degree Murder."

Defense counsel responded in his opening statement:

> "At the conclusion of all the evidence the problem is the State can't prove beyond a reasonable doubt who did this shooting. They have made a choice. They have chosen [the defendant], and they are calling in witnesses that they gave deals to attempt armed robbery I believe is what the group pled to and they let each one of them not be charged with felony murder as long as they cooperate and they name [the defendant].

> It's absolutely impossible that not one of those individuals was in the room with what happened. It's not at all hard to believe that the whole group was in there threatening this man. You will hear evidence from some State witnesses that there were [*sic*] more than one person seen or heard in the room where the shooting happened, but nobody knows who did the shooting, nobody carried a gun, nobody saw a gun. Yet these four are the road to conviction for [the defendant]. That's wrong."

After defense counsel completed his opening statement, the prosecutor asked if he and defense counsel could approach the court. A bench conference was held at that time, off the record. Although there is no record of that conference, it appears from the prosecutor's statement at a later point in the trial that the bench conference had to do with the issue of accountability.

¶ 6      During the evidence phase of defendant's jury trial, numerous witnesses were called to testify. The evidence established that on May 30, 2007, in the afternoon or evening, the defendant and the four accomplices (sometimes referred to as the group) were together. The four accomplices knew each other well and were close. Defendant, however, was more of an acquaintance. Some of the members of the group had been smoking marijuana that day. The group, either collectively or certain individual members, came up with the idea to rob a person (the target subject), who sold cannabis, and to take the cannabis from that person. At about 1:45 a.m. on May 31, defendant and the four accomplices took a black-colored vehicle to an apartment complex in Moline where the target subject lived. One of the accomplices drove the vehicle. They circled the block a few times looking for the right area of the apartment complex. Defendant and three of the accomplices got out of the vehicle and

went over to the apartment complex. The other accomplice, who was driving the vehicle, remained in the vehicle.

¶ 7    The target subject, however, was not at home. At that point, defendant and the three accomplices came across Mr. Little. Although the record is not quite clear on this issue, it appears that Little may have been leaving his apartment at the time. Little was on his cell phone talking to his girlfriend. A scuffle allegedly ensued between defendant and Little, which was heard by Little's neighbor and by Little's girlfriend over the phone. Little's girlfriend heard Little saying that he did not have anything and that they could check his pockets. Believing that he was being robbed, Little's girlfriend told her friend to call 9-1-1, while she remained on the phone listening to what was happening, until someone hung up Little's phone.

¶ 8    The struggle continued into Little's apartment, which had a narrow entranceway. Allegedly, defendant entered farther into the apartment, and the three accomplices stood somewhat in a row, closer to the door. All four accomplices testified that they did not have a gun that night, that they did not see defendant with a gun that night, and that they did not know that defendant had a gun. One of the accomplices saw Little on the floor of the apartment and knew that Little was not the target subject that they were looking for. A resident of one of the apartments across from Little's apartment heard the commotion, looked out the window, and saw the silhouette of what appeared to be Little being robbed by approximately three subjects, with one of the subjects holding a gun on Little. That resident went to get the apartment manager and as he did so, a single shot rang out. Little's neighbor also heard the shot. According to the three accomplices, they heard the shot as well but did not see defendant shoot Little. Defendant and the three accomplices ran from the area. Defendant and two of the three accomplices were in phone contact with the fourth accomplice, who was still in the vehicle. Those phone calls and the time and duration were documented by phone records, some of which showed a location near the apartment complex. Within a short time, defendant and the three accomplices were picked up by the fourth accomplice, and they left the area. According to all four accomplices, in the car ride home, they never discussed what happened. Nor did they discuss it amongst themselves later.

¶ 9    Little ran to a cab that was waiting, told the driver that he had been shot, and asked the driver to take him to the hospital. The driver went a block and then pulled over and called an ambulance. Little passed out in the cab. When the ambulance arrived, Little was taken to the hospital where he died a short while later. The fatal wound was a single gunshot which grazed Little's leg, entered his abdomen, traveled upwards, and went through his aorta, causing massive internal bleeding.

¶ 10    The following afternoon, defendant left town and took a bus to Minneapolis. Defendant gave a male friend money to purchase the ticket for him, and the ticket was in the male friend's name. Bus records were admitted, which showed that a ticket to Minneapolis had been purchased on the date in question in the name of defendant's male friend. Defendant allegedly told a female friend, who gave him a ride to the bus station, that he tried to rob a guy in Moline the night before and that he shot the guy in the gut because he thought the guy was reaching for a gun.

¶ 11    Defendant did not testify at the trial. However, defense counsel thoroughly cross-examined the key State witnesses, including the four accomplices. In addition, defense counsel called to the witness stand an inmate at the jail, who was in a cell block with defendant. The inmate testified that while in jail, he had overheard one of the accomplices telling someone else that defendant was not supposed to be in jail and that they had lied about defendant so that they could get out of jail themselves.

¶ 12    During the jury instruction conference, the issue of accountability again surfaced. After a brief discussion, the attorneys agreed that accountability was not a part of the case and that the jury would not be instructed on the issue of accountability. The trial court did not take a position on the matter and merely adhered to the parties' agreement. However, during closing argument, defense counsel attacked the credibility of the four accomplices, who were all friends of each other but only an acquaintance of defendant, and suggested "that the evidence [showed] that three of these four could have been involved and done the shooting."[1] The State objected to that comment, and a conference was held outside the hearing of the jury. The following conversation ensued:

> "[PROSECUTOR]: This is why the accountability instruction–
>
> THE COURT: Not going to accountability.
>
> [PROSECUTOR]: This is why accountability was withdrawn because there was no evidence to back up what he is arguing right now. The evidence would show that one of these guys could have done the shooting even with that evidence the accountability instruction establishes that he is still guilty of murder but they're not getting instructed because as we all agreed there was no evidence to that effect and he wasn't going to argue that.
>
> ***
>
> [DEFENSE COUNSEL]: The evidence that the State put on was that there were [*sic*] a group there was at least three people in the room, all of the other young men, all of the other men testified that they were there, they didn't see anything. We–it's just–it's just as believable that one of them carried the gun in as [the defendant], because nobody saw somebody [*sic*] had a gun. I am saying based on the lack of pinpointing where the gun is, any of those people in there could have shot him. That's all I said.
>
> THE COURT: Yeah, I think it's okay.
>
> [PROSECUTOR]: That makes the accountability instruction.
>
> THE COURT: It may or it may not. ***
>
> [PROSECUTOR]: I think he is entitled to argue it's incredible–it might be that [the defendant] did nothing about it. But if his argument was one of the other boys during the course of this robbery did it then the accountability instruction is absolutely relevant.
>
> THE COURT: Not if [the defendant] didn't know he was going to commit a robbery.
>
> [PROSECUTOR]: There is evidence of that.

---

[1]One of the accomplices remained in the car.

THE COURT: I'm going to have the jury step aside.

(The following proceedings were had out of the presence of the jury.)

THE COURT: Okay. As the Philadelphia Story says, like I'm in sixth grade.

[PROSECUTOR]: Here goes then. There is no evidence to back up [defense counsel's] argument on this point. First, he is arguing facts that are not in evidence. Second, if he is creating an inference, if he is arguing based on reasonable inferences, those reasonable inferences if adduced from the facts in evidence, give rise to the need for the accountability instruction. There would be evidence of accountability from at least two of the witnesses who say that there was in fact a plan to go rob somebody, albeit Demarco Thorton that intent could transfer to Darrell Little. There is–if this is the inference that [defense counsel] is trying to create, that inference can be cured by the instruction on accountability for which we had the conference on instruction, [defense counsel] said he wasn't going to do this, and now he is doing this.

THE COURT: Mr. [Defense Counsel].

[DEFENSE COUNSEL]: The point I am making to the jury Your Honor, is that there is a group of people who ultimately saw nothing and did nothing and they were in the same position as the defendant. The defendant is charged with felony murder and any of those people who were in that apartment could have had a gun, could have done the shooting.

THE COURT: Yeah, but how does that–I am inclined at first blush to say that it's within the parameters of rationality from the facts in evidence that somebody else could have shot the defendant–the deceased, but if I get there, how do I escape the accountability instruction? And if I need the accountability instruction, how do I escape the fact that the parties agreed to withdraw it and therefore the State didn't argue it[?]

[PROSECUTOR]: And beyond that, judge, the fact that [the defendant's] own counsel is basically arguing for an acquittal that would ultimately lead to his conviction on the accountability instruction.

THE COURT: It's complicated. Read back the last statements made by defense counsel before the objection, please. The last argument.

(The previous statement was read in open court.)

THE COURT: There is evidence that the three others were involved, but I'd have to agree with the State that there is no evidence that anyone else could have done the shooting, other than pure speculation. There is not one statement directly or indirectly that connects anybody to the deceased. There is a lot of evidence that nobody knows who is wrestling with the deceased at the time of the shooting, the silhouette person didn't know. The lady next door didn't know. The other defendants, co-defendants, or not co-defendants in this case but the other persons there who were out there in the car, all minimized their testimony, but having done so none of them said that they had a gun or that they did the shooting. The only admission we have is the one that connects the defendant to the shooting.

I think it's a fair argument for the defense that the four friends got together and

cooked up a story blaming it on the defendant. But I think it's a stretch to say that there is evidence that one of the other three did it. And I know I am splitting hairs here, but I think I am splitting them in the right way. Your opening statement, [defense counsel], was that the confederates cooked up the story and blamed it on the non-friend. And that's kind of the case that you've left the jury with. There are really no eyewitnesses to the shooting. And absent the Alaniz testimony [the female subject who gave defendant a ride to the bus and to whom defendant allegedly admitted shooting Little], and the flight, I mean there [are] a lot of circumstantial facts to show that the person who probably did it was the defendant, but in terms of actual admissions or anything concrete, it's Alaniz. So I think it's within the bounds of the evidence for you to argue that Alaniz is a liar, which is what you would have to say, and that it's just as likely as not that somebody else shot him, but I don't think you can take it to the next step, which is that there is evidence that somebody other than the defendant who shot the gun because there is no such evidence. I think circumstantially you can argue what I've just said.

[DEFENSE COUNSEL]: Well, Your Honor, I thought the point being made was there were other people who had an opportunity to commit this offense. There were other people seen in the room and those other people are not telling the truth.

THE COURT: I think you can say that. But you can't say that there is evidence.

[DEFENSE COUNSEL]: Well, that is evidence the fact that people are seen through the window up to three people, three or four different voices.

THE COURT: All these are circumstantial facts that you can argue.

[DEFENSE COUNSEL]: So that is what I was working on.

[PROSECUTOR]: But he is arguing to create the inference that somebody else did the shooting. I am assuming that's why he is arguing that.

THE COURT: Oh, yes, of course he is.

[PROSECUTOR]: And once that's the case, the accountability instruction becomes very relevant. He objected to the accountability instruction in the conference on instructions.

THE COURT: We do have that quandary, don't we?

[DEFENSE COUNSEL]: Yes.

[PROSECUTOR]: And now I get to get up if this is allowed and say, well, actually the plan does not matter now, ladies and gentlemen.

THE COURT: I don't want to shut you down, Mr. [Defense Counsel], because there is only one person on trial for murder and that's your client. So I don't want to shut your mouth, but I am in a box now, too, because the State's Attorney has had the rug pulled out from under him because he didn't get to argue accountability, which could have broadened the whole scope of his argument to include every possibility, and now he's only got the one shot which is he did it, and even if I allow you to expand it, he's in a position of now being the defense attorney, he is going to have to defend his position in his next argument, and why didn't he say that before? And I certainly don't want to do anymore instructions to the jury in-between 'cause that would be much too much of a

-7-

highlight and yet I am still reluctant to shut your mouth because of the reasons I have already given. Do you persist? Do you want to make this argument?

[DEFENSE COUNSEL]: No, I don't wish to make an issue of accountability.

THE COURT: Here is where I think it has to go. I think if you persist in arguing accountability, in essence, passing the buck off to one of the other guys, then I am reluctantly going to have to let you do it, then I'm going to have to let the defense–the State talk about why it doesn't matter, and I'm going to have to add the instruction in. I think that's where I have to land in terms of what my responsibility is as the trier of fact. So if–I can sustain the objection and then it's clean and it's me, but if you want to persist, and I know the State's Attorney will be angry with me for a couple of weeks but he'll get over it.

[PROSECUTOR]: I will adapt either way, judge.

THE COURT: But I'm going to have to let you do it. But if so, then the State is going to get to challenge it in his reargument, in his rebuttal argument, and then I'm going to add that instruction into the mix.

[DEFENSE COUNSEL]: Well, I will attempt to finish my argument without mentioning anything that may be interpreted as accountability.

THE COURT: Okay. We'll play it the way–you play it as you will from here. I think that is where I have to go. Okay. Bring the jury back in."

When the jury returned, the trial court informed the jurors that the objection was sustained and that they were to disregard the comment as being outside the evidence.

¶ 13     After the closing arguments were concluded, the jury was instructed on the law. The initial instructions did not include an accountability instruction. During the second day of deliberations, the jury came back with a question for the trial court. The jury's question read as follows: "Under Illinois law during a robbery if one of the robbers commits murder all are liable for that murder?" The trial court and the attorneys discussed how the question would be answered. The following conversation ensued:

"THE COURT: *** The obvious answer is, yes, but that doesn't answer all the questions. How do you propose we respond to this, Mr. State's Attorney?

[PROSECUTOR]: Judge, if I may create a brief record.

THE COURT: Yes.

[PROSECUTOR]: The court recalls following opening statements by both counsel–

THE COURT: How about first just tell me how you think I ought to respond to this.

[PROSECUTOR]: I think the court should answer the question and give the jury directive on the rule of law.

THE COURT: So you're requesting instructions and my short answer of yes?

[PROSECUTOR]: I would request the instructions, and if the court chooses to answer, yes, that's fine.

THE COURT: All right. Now make your record.

[PROSECUTOR]: As a matter of a brief record, both counsel conducted opening

-8-

statements. Before I called my first witness I asked all–if all counsel could approach the bench, the court allowed that. I indicated at that time that defense counsel's opening statement created an accountability, if that was the case theory they were proceeding on, it created an accountability scenario that would deem the instructions to be appropriate. I don't recall whether or not the court agreed at that time, but I do recall we addressed that issue at the outset. We then proceeded to call the witnesses. During the course of the testimony [defense counsel] inquired as to whether or not all of these witnesses received deals in exchange for their testimony to implicate [the defendant], so that started laying the foundation for [the defendant] didn't kill Mr. Little, you all just got deals to avoid murder yourself. That's exactly the line of defense that he created on cross-examination. Then in the defense case-in-chief the witness that they decided to call established the fact that Andre Richardson [one of the four accomplices] admitted in jail to lying and basically framing [the defendant] for the homicide. At no point does [defense counsel] confront anybody that [the defendant] was not part of this. As a matter of fact in his opening statement he acknowledged that the evidence would show that [the defendant] was there but he was the outsider and that the jury or that these four boys pointed the finger at [the defendant] because they got deals. Then in the conference on instructions, the informal conference, I offered up the accountability instructions to the court highlighting the fact that at this point–at the informal conference on instructions there had not been any evidence by the defense. At the informal conference on instructions I highlighted the fact that based on [defense counsel's] opening statement, we had evidence of–or there could be evidence of accountability. We decided that we would address it as it came up. Defense proceeded with their case, presented Delvonte Hearn [defendant's cell mate]. Delvonte Hearn said that Andre Richardson lied about–or Andre Richardson admitted to lying on [the defendant]. The defense rested. The State argues–and we do the conference on instructions, the formal conference on instructions at that point. I have in that formal conference on instructions the accountability instructions as to felony murder. At that time it was agreed that [defense counsel] was not going to argue the accountability issues. I said that is when it would be proper for the instruction. Everybody agreed that [defense counsel] wasn't going to do that, at that point the instructions were withdrawn. We then proceed to closing arguments. I argued [the defendant] as principal, not as an accountable act. [Defense counsel] gets up and begins the process of arguing that [the defendant] is not the principal. I object. Initially the court overruled my objection. We take up the matter outside the presence of the jury, we go through the process of arguing about the instructions and things of that nature, [defense counsel] said that he would not pursue that line of argument further. We then go back on at which time [defense counsel] continues with the fact that these four boys made up a story, [the defendant] is the outsider, they've all got deals. The direct implication of that is that [the defendant] is not the shooter. Again, no evidence showing that [the defendant] was not present and not participating, but just that [the defendant] was not the shooter.

THE COURT: Okay. I got it. What do you think I ought to do?

[DEFENSE COUNSEL]: Your Honor, I presented evidence and argued to the jury that [the defendant] was not guilty of this offense. You can't trust the testimony of the

other people. I never named a person that did it, I never said the other four did it, I just said there were five people there and [the defendant's] involvement more or less is because they, the State, bought the testimony through giving them deals.

Accountability was specifically excluded in the case by the State was [the defendant] did it [*sic*], these other people were there, and they're going to testify to it. Individual responsibility of [the defendant] that's how they pled the case and that's how the jury was instructed. Now the State's saying that I brought accountability back into it and I disagree. I don't think there is anything I said or did that–what would bring accountability in? I don't want accountability in. I don't want to argue [the defendant] along with these other people were there and somebody else shot him and named that person and we open up this door where they're all accountable. For some reason, the State wanted to go after him individually and charge the others the way they did. And I simply pointed out it was unfair that the–[defendant] is getting charged with murder because of lies by the other individuals. We don't know who shot–nobody saw who shot him, nobody saw a gun. The evidence is weak. I argued to them proof beyond a reasonable doubt.

THE COURT: Okay. Here is the way it stacks up in my mind. The defendant was charged with shooting Darrell Little himself. And that's how the case got tried. That was the charge and that was the State's evidence. It came in primarily through Myranda Alaniz. The defense case was that the defendant didn't shoot the deceased and that everybody got a deal to lie on the defense. There is really no evidence that anybody could have shot the decedent other than one of the five people that were there, four people, one was in the car. So one of the four people who were present, including the defendant, shot the deceased. So it's clearly an accountable case because there is more than enough evidence that there was a robbery. We're in this pickle because both the State and the defense for their own respective reasons decided to pull the accountability instruction out of the box. And everybody knew where they were going when they did that. So I am not impressed by anybody's woe is me argument or surprise argue [*sic*]. Everybody–the State had their reasons why tactically why they didn't want to the preferred to do it this way, presumably to try to off set the deals that we're made. And the defense had a reason why they didn't want it, because they probably couldn't win the case if there was an accountability instruction. But I think the question I have to ask myself is, whether this is a new theory. It's not a new charge but whether it's a new theory that is not being presented after the jury commenced its deliberations.

Clearly the defense's theory is that the other guys who were one in all guilty of murder, were not charged with murder because they had a deal. The bottom line there is that they were guilty of murder too, but they got together and dumped it all on [the defendant] and therefore they weren't charged with murder. If we now tell the jury that it's accountable, it's an accountability issue, was the defense denied an opportunity to respond to it? No, they weren't. All of the evidence that could possibly be developed on this question was presented. All of the people that were there, except the defendant, testified.

At the core of all of this, it's the defendant's theory to the jury that one of the other

-10-

guys committed the murder, one or more of the other guys committed the murder and blamed it on him.

If the accountability instruction was there, would that have damaged his ability to defend with that theory? I don't believe so because there was nothing else really he could say. The entire defense–the factual defense was thoroughly presented. If the accountability instruction had been given timely, as it's pretty obvious now that it should have been, the evidence would not have changed, the defendant didn't testify. Because the only evidence that he could present that would help himself is that he was never there, they not only dumped it on him, but he was not there.

I am really dragging this out and being reluctant because–

[DEFENSE COUNSEL]: Your Honor.

THE COURT: Yes.

[DEFENSE COUNSEL]: The fact that the defendant didn't testify was a decision we made based on how the case was being tried. If we knew that accountability was going to be argued, he may have testified. He didn't testify because we thought the four witnesses were not that strong.

[PROSECUTOR]: Judge, the instructions conference occurs at the close of the evidence. [The defendant] has to make that call well before instructions are talked about.

THE COURT: I'm sure [the defendant] didn't testify because of his record.

I'm going to give the instruction. And so the Appellate Court can tell me where I went wrong, if that's what happened. Accountability, the factual basis for a theory of accountability has been introduced by the defense, actually they have introduced the reverse of it. They're saying we're not accountable because I didn't do it, one of those guys did it, and so I'm not guilty. Factually, as a matter of law, he is guilty if one of those guys did it. So, when I am looking at the statute, the defendant has not been denied his right to reply to the theory, and that's the bottom line that I have to look at. Whether the defendant was unable to present a defense to this new theory because I am introducing an instruction that expands the playing field, I am clearly expanding the playing field but I am not expanding it to the defendant's detriment, because he had an opportunity to present the theory because in fact he is the one that introduced the theory. So I am taking my chances on giving the instruction. Bring the jury in please.

(The following proceedings were had in the presence of the jury.)

THE COURT: Please be seated. Ms. Reporter, please show that the jury is back in court with a question. *** The question is, 'Under Illinois law during a robbery if one of the robbers commits murder, are all liable for that murder.' And for the record I am displaying the answer. And the answer is, 'Yes.'

I am going to give you two additional instructions.

'To sustain the charge of first degree murder, it is not necessary for the State to show that it was or may have been the original intent of the defendant or one for whose conduct he is legally responsible to kill the deceased, Darrell Little.

It is sufficient if the jury believes from the evidence beyond a reasonable doubt that

the defendant and one for whose conduct he is legally responsible combined to do an unlawful act, such as to commit Attempt Robbery and that the deceased was killed by one of the parties committing that unlawful act.'

The second instruction. 'A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of an offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense.

The word "conduct" includes any criminal act done in furtherance of the planned and intended act.'

That concludes this answering of the question. You may return the jury to their deliberations, please."

¶ 14    After the jury left the room and went back to deliberations, the trial court discussed the matter further. Of relevance to this appeal, the following comments were made:

"THE COURT: *** [T]here could be no doubt that the defendant is in a different position given the instruction that I just gave them than he was before, good or bad, I don't know what the jury is thinking, but maybe he is better off now than he was before. Maybe he is worse off, but he certainly is in a different place. But my concern simply is whether the defense had an opportunity to reply to this theory.

[PROSECUTOR]: Well, my point, judge, is that this may–we don't know this may not be even in reference to the defendant. It may be in reference to how good of a deal–

THE COURT: We never get to know that, nor do I have any right to be thinking about that when I am making a decision. You get a new instruction after they deliberate when they were not originally instructed if it's not a new theory, which it isn't, and if the jury–if the defendant had an opportunity to present evidence regarding that theory. Both of those tests have been met, that's why I have done it. Everything else is neither here nor there. Period."

¶ 15    About two hours later, the jury returned with a verdict and found defendant guilty of felony murder. Defendant filed a motion for new trial and argued, among other things, that the trial court committed reversible error in giving the jury the accountability instruction. After a hearing, the trial court denied the motion, stating in part:

"With regard to accountability, I think I made the right decision and we'll just have to see. It's not something that happens every day, but it isn't the first time that it's happened and I think the State is correct and I believe that I was correct when I ruled that the question of accountability is always on the table. And when a question of law presented or requested by the jury it is my duty to properly instruct them and I believe that I have properly instructed them. So the motion with regard to accountability will be denied. And therefore the motion for new trial will be denied."

After a sentencing hearing, defendant was sentenced to 50 years' imprisonment. Defendant's motion to reconsider sentence was denied, and this appeal followed.

¶ 16                                        ANALYSIS

¶ 17        On appeal, defendant argues first that he was denied his due process right to a fair trial
when the trial court instructed the jury on a new theory of guilt, accountability, in response
to a jury question after the jury had begun its deliberations. Defendant asserts that the trial
court's conduct deprived him of the right to address the theory of accountability in his
closing argument and requires that his conviction be reversed and that his case be remanded
for a new trial. The State does not dispute that accountability was a new theory of guilt and
that it was error for the trial court to instruct the jury on that new theory after deliberations
had already begun. The State argues, however, that the error was harmless because the issue
of accountability was interjected into the case by defense counsel in closing argument and
because the evidence of defendant's guilt as a principal was overwhelming.

¶ 18        A trial court's determination of whether to give a particular jury instruction will not be
reversed on appeal absent an abuse of discretion. See *People v. Jamison*, 207 Ill. App. 3d
565, 567 (1991). An abuse of discretion occurs where the trial court's ruling is arbitrary,
fanciful or unreasonable, or where no reasonable person would take the view adopted by the
trial court. *People v. Donoho*, 204 Ill. 2d 159, 182 (2003).

¶ 19        In *People v. Millsap*, 189 Ill. 2d 155 (2000), our supreme court addressed the same issue
that is raised in the present case in a similar factual context. In discussing that issue, the
supreme court stated as follows:

              "The general rule when a trial court is faced with a question from the jury is that the
         court has a duty to provide instruction to the jury when the jury has posed an explicit
         question or requested clarification on a point of law arising from facts about which there
         is doubt or confusion. [Citation.] Nevertheless, a trial court may exercise its discretion
         to refrain from answering a jury question under appropriate circumstances. [Citation.]
         Appropriate circumstances include when the instructions are readily understandable and
         sufficiently explain the relevant law, where further instructions would serve no useful
         purpose or would potentially mislead the jury, when the jury's inquiry involves a
         question of fact, or where the giving of an answer would cause the court to express an
         opinion that would likely direct a verdict one way or another. [Citation.] Further, the
         court should not submit new charges or new theories to the jury after the jury commences
         its deliberations. [Citation.]

                                                * * *

              *** Because the court in this case instructed the jury on accountability after the jury
         had begun its deliberations, defendant's attorney was entirely deprived of an opportunity
         to defend against that theory.

              Significantly, the court's response to the jury's question not only violated a statutory
         procedure, it impinged upon a constitutional right. The United States Supreme Court held
         in *Herring v. New York*, 422 U.S. 853, 857-59, 45 L. Ed. 2d 593, 598, 95 S. Ct. 2550,
         2553-54 (1975), that a defendant's right to make a closing argument is guaranteed by the
         Constitution. ***

                                                * * *

              When faced with the jury's question, the court should have told the jurors that they

-13-

had the instructions applicable to this case and that they should keep deliberating. The State elected to charge defendant as a principal and to argue that defendant was guilty as a principal. If, as the State insists, an accountability instruction was appropriate in this case, the State should have asked for such an instruction at the proper time. It was too late for the State to change its theory of the case after the case had been sent to the jury. The court should not submit new charges or new theories to the jury after the jury commences its deliberations. [Citation.]" *Millsap*, 189 Ill. 2d at 160-65.

¶ 20 This court had addressed a similar issue almost 10 years earlier in *People v. Jamison* and had reached the same conclusion. See *Jamison*, 207 Ill. App. 3d at 567-68. Based upon *Millsap* and *Jamison*, there can be no dispute in the present case, and indeed there is no dispute, that the trial court erred in instructing the jury on a new theory of guilt, accountability, during deliberations, in response to the jury's question. See *Millsap*, 189 Ill. 2d at 160-65; *Jamison*, 207 Ill. App. 3d at 567-68. Although the State argues that the error was harmless because it was interjected by defense counsel in closing argument and because the evidence of defendant's guilt as the principal in this case was overwhelming, we are not persuaded by that argument. The supreme court in *Millsap* outright rejected any claim of harmless error in this context, stating: "Clearly, the court's error was not harmless. The Constitution guarantees defendants the right to make a closing argument, no matter how ' "simple, clear, unimpeached, and conclusive the evidence may seem." ' " *Millsap*, 189 Ill. 2d at 166 (quoting *Herring*, 422 U.S. at 860 (quoting *Yopps v. State*, 178 A.2d 879, 881 (Md.1962))). Moreover, we are not convinced that defense counsel's brief comment in closing argument, that one of the accomplices could have shot the victim, was sufficient to interject the issue of accountability into this case. See *People v. Wilson*, 312 Ill. App. 3d 276, 285 (2000). To draw that inference, we would have to speculate as to the thought process of the jury during deliberations that led to the posing of the question to the trial court. In addition, even if we were to conclude that this was invited error, we have found no authority to suggest that invited error, however slight, would allow us to ignore the clear precedent set forth in *Millsap*.

¶ 21 In reaching the conclusion that we have reached in the present case, we have found the case of *People v. Wilson*, cited above, to be nearly factually identical to the present case and highly persuasive. In *Wilson*, the defendant was charged as a principal with murder and under a theory of accountability with armed robbery. *Wilson*, 312 Ill. App. 3d at 277-83. Because the defendant was charged as a principal with murder, the jury was not instructed on a theory of accountability as to the murder charge. *Wilson*, 312 Ill. App. 3d at 282-83. During closing arguments, defendant's attorney commented that one of the accomplices was believed to have had a gun and could have been the person who shot the victim. *Wilson*, 312 Ill. App. 3d at 287. After 10 hours of deliberations, the jury asked a question that raised an issue of accountability as to the murder charge. *Wilson*, 312 Ill. App. 3d at 283. Over defense counsel's objection, the trial court instructed the jury on accountability, and the jury subsequently convicted defendant. *Wilson*, 312 Ill. App. 3d at 283-84. The appellate court, following *Millsap* and *Jamison*, found that the defendant had been denied his due process right to a fair trial in that the jury was instructed on a new theory of the case after deliberations had started and defendant was not given an opportunity to make a closing

-14-

argument on that new theory. *Wilson*, 312 Ill. App. 3d at 285-87. In reaching that conclusion, the appellate court rejected the State's assertion that defense counsel had interjected the issue into the case by his comments in closing argument, stating:

> "Arguments and statements based upon the facts and evidence, or upon reasonable inferences drawn therefrom, are within the scope of proper closing. [Citation.] Under the particular facts of this case, the defense's arguments and statements were based upon reasonable inferences drawn from the evidence. Unlike the trial court's conclusion, we do not believe defense counsel's argument gave rise to an inference that defendant had aided, abetted, or had acted in concert with anyone else in shooting the victim. The evidence pertaining to the murder charge did not support the accountability instruction. The State and the defense were advocating an all-or-nothing decision, *i.e.*, either defendant shot Taylor or he did not. By tendering the accountability instruction, the court interjected into the case a theory that was contrary to the theories of the defense and the State and, perhaps, allowed the jury to avoid making the difficult decision of whether defendant had been proved guilty beyond a reasonable doubt of murder by settling for a compromise decision based on a theory that the defense had had no chance to address.
>
> We conclude that, because the defense never had the opportunity to argue accountability as it pertained to the murder charge and because the jurors' query after 10 hours of deliberation implied that they had not yet reached a verdict on the murder charge and had some concerns as to whether defendant was the shooter, the trial court abused its discretion in submitting an instruction that presented a new theory. [Citation.] We are cognizant that the State also did not have an opportunity to argue accountability, but defendant was far more prejudiced by the defense's inability to address the inapplicability of this theory than was the State. Allowing the instruction provided the State with two theories on which the jury could base its finding of guilty of murder rather than on the single original theory presented at trial that defendant shot the murder victim. As defendant was possibly convicted upon a theory that he was never given a chance to address, we believe he was denied a fair trial." *Wilson*, 312 Ill. App. 3d at 287.

¶ 22     Based upon the rulings in *Millsap*, *Jamison*, and *Wilson*, we find that defendant was denied a fair trial in the instant case when the trial court instructed the jury on a new theory of guilt, accountability, in response to a jury question, after jury deliberations had begun. Therefore, we reverse defendant's conviction for felony murder and remand this case for a new trial. Even though it is clear from the record that the trial court knew the law in this area, considered the impact of the choices available to it, thoroughly discussed this issue with the attorneys before making a decision, and placed its thought process on the record for the benefit of this court, we still must conclude that the trial court committed an abuse of discretion when it found that accountability was not a new theory and instructed the jury on accountability after jury deliberations had already begun. See *Millsap*, 189 Ill. 2d at 160-65; *Jamison*, 207 Ill. App. 3d at 567-68; *Wilson*, 312 Ill. App. 3d at 285-87.

¶ 23     Having determined that defendant is entitled to a new trial, we need not specifically address defendant's second contention, that his sentence of 50 years' imprisonment was excessive.

¶ 24        For the foregoing reasons, we reverse defendant's conviction and sentence for felony murder and remand this case for a new trial.

¶ 25        Reversed and remanded.