(No. 87096.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DERRICK MILLSAP, Appellant.

*Opinion filed January 27, 2000.*

Michael J. Pelletier, Deputy Defender, and Michael C. Bennett, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant, and Derrick Millsap, of Vienna, appellant *pro se*.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee Goldfarb, Kenneth T. McCurry and Miles J. Keleher, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RATHJE delivered the opinion of the court:

Following a jury trial, defendant, Derrick Millsap, was convicted of home invasion (720 ILCS 5/12—11(a)(2) (West 1996)) and robbery (720 ILCS 5/18—1(a) (West 1996)). The court sentenced him to 20 years' imprisonment. Defendant appealed, arguing that his due process rights were violated when the trial court gave the jury an accountability instruction after the jury had begun deliberating. The appellate court affirmed. No. 1—98—0388 (unpublished order under Supreme Court Rule 23). We granted defendant's *pro se* petition for leave to appeal.

## BACKGROUND

The victim, Helen Drwiega, testified that she was 85 years old and lived alone. On November 21, 1996, at about 4 a.m., she was asleep on her couch when she was

awakened by a rough, wet glove pushing down on her face. The person who had his hand over her face told her not to scream and that he would not hurt her. Drwiega had a hard time breathing and could not see anything. Drwiega could not be sure if there was more than one intruder in her house. The person who had his hand over her face said, "Look over there," and Drwiega had a feeling that he was talking to another person. The person who had his hand over her face told her that he wanted her money. Drwiega responded that she did not have any money.

While keeping his gloved hand over Drwiega's face, the intruder rummaged through several purses Drwiega kept underneath a coffee table. The gloved hand was very tight over Drwiega's face, and the rough surface left a scratch on her face. Drwiega testified that the person who had his hand over her face told her that "they" were leaving and instructed her to stay on the couch for a few minutes and not to make any noise. A pouch-type wallet that contained several bills and over $2,000 in cash belonging to Drwiega's brother had been taken from one of the purses underneath the coffee table.

Drwiega rose from the couch several minutes later and saw someone climbing out of her kitchen window. Her telephone was inoperable so she went to a neighbor's house and asked the neighbor to call 911. Upon returning from the neighbor's house, Drwiega discovered that the intruder had returned. He demanded Drwiega's wallet, and she recognized the voice as that of the man who had put his gloved hand over her face. Drwiega told the intruder that she did not have a wallet. When police sirens sounded outside, the intruder crawled out of Drwiega's window. A police officer came to the front door, and Drwiega told him that the intruder was crawling out of her window. The police later returned accompanied by a man and carrying the pouch-type wallet. Drwiega could

not identify the man, but she identified the wallet and the money it contained.

Chicago police officer George Porter testified that, while on patrol on the date in question, he received a radio transmission of a burglary in progress on South Emerald Avenue. He arrived at the address 10 to 20 seconds later and other officers arrived after another 10 seconds. Drwiega told the officers that the offenders were going out the back of her home. Officer Porter looked down the gangway and saw a man in dark clothing running from the rear area of the house. Officer Porter pursued the man down an alley and into a yard six to eight houses away. Porter found defendant lying against the side of a house with his jacket pulled up over his head. Defendant had a black wallet in his right pocket, which Drwiega later identified as belonging to her. The wallet contained the $2,000 that belonged to Drwiega's brother. Defendant also had some bills in his pocket; the bills had Drwiega's address on them. Officer Porter further testified that defendant was wearing the same clothes as the person he saw both in Drwiega's backyard and running through the alley. Porter searched the victim's backyard and discovered that a ladder had been placed beneath her kitchen window and that the window had been removed.

Chicago police detective Mark Hofer also responded to the burglary-in-progress call and spotted defendant in an alley behind Drwiega's garage. There was a street light in the alley, and Hofer could see defendant's face. Hofer subsequently saw Officer Porter pursuing defendant down the alley and next saw defendant lying on the ground at 12124 South Emerald. After defendant was arrested, Hofer went inside Drwiega's residence. He observed a scratch on Drwiega's face, saw that her kitchen window had been removed, and noticed that a table under the window on the inside had muddy

footprints on it. Hofer also observed two fresh sets of shoe prints going in different directions in the wet snow outside the window. Hofer believed that the sets of shoe prints might have been different and testified that there were two offenders. Hofer also stated that one set of prints ended in the yard where defendant was arrested and the other set led into a vacant lot and towards Halsted Street.

Walter Kryszak, an expert in the field of shoe impression comparisons, testified that he had examined a photograph of impressions left inside the victim's residence and compared them with a photograph of the soles of defendant's shoes. Kryszak concluded that one of the overlapping impressions from inside Drwiega's house was not from defendant's shoes and that the second impression contained many similarities to defendant's shoes. Nevertheless, because of the poor quality of the photograph of the shoe impressions, he could not say with certainty that the impressions came from defendant's shoes.

The State at no time pursued an accountability theory. Defendant's robbery and home invasion indictments charged him with taking the money and wallet from Drwiega and causing the injury to her face, and the State did not request that the jury be instructed on accountability. Further, neither side argued to the jury with respect to accountability. The State argued that defendant caused the injury to Drwiega's face and that defendant took her money.

Forty minutes into its deliberations, the jury sent the judge a note that read, "Is the accomplice just as guilty at [sic] the offender who causes an injury in a home invasion?" The trial judge proposed answering the question by instructing the jury on accountability. Defendant's attorney objected, arguing that there had been no evidence presented on the elements of accountability and that he

had not had a chance to argue about accountability. Because the accountability issue was "coming out of left field," defendant's attorney proposed telling the jurors they already had everything. The trial judge gave the following instruction, reasoning that there was evidence that a second person had been present at the crime scene:

"A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of the offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense.

The word 'conduct' includes any criminal act done in furtherance of the planned and intended act."

The jury subsequently returned guilty verdicts on both charges.

Defendant appealed, arguing that the court erred in instructing the jury on a new theory after the jury had begun deliberations. The appellate court affirmed. The court held that an accountability instruction would have been appropriate on these facts, and that a trial court has a duty to answer jurors' questions when the jurors request clarification on a point of law.

Defendant appeals the appellate court's judgment, arguing that he was deprived of his due process right to a fair trial when the court instructed the jury on a new theory after deliberations had begun. The basis of defendant's argument is that the trial court's action deprived him of his right to address the accountability theory in his closing argument.

## ANALYSIS

The general rule when a trial court is faced with a question from the jury is that the court has a duty to provide instruction to the jury when the jury has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion. *People v. Childs*, 159 Ill. 2d 217, 228-29 (1994).

Nevertheless, a trial court may exercise its discretion to refrain from answering a jury question under appropriate circumstances. *People v. Reid*, 136 Ill. 2d 27, 39 (1990). Appropriate circumstances include when the instructions are readily understandable and sufficiently explain the relevant law, where further instructions would serve no useful purpose or would potentially mislead the jury, when the jury's inquiry involves a question of fact, or where the giving of an answer would cause the court to express an opinion that would likely direct a verdict one way or another. *Reid*, 136 Ill. 2d at 39-40. Further, the court should not submit new charges or new theories to the jury after the jury commences its deliberations. *People v. Gramc*, 271 Ill. App. 3d 282, 288-89 (1995), *overruled in part on other grounds, People v. Garcia*, 188 Ill. 2d 265 (1999).

The State argues that the trial court responded to the jury's question appropriately because an accountability instruction was justified by the evidence. According to the State, the evidence suggested that a second offender was present. The State relies on *People v. Batchelor*, 202 Ill. App. 3d 316, 331 (1990), in which the court held that even slight evidence of guilt by accountability is sufficient to support giving that instruction, regardless of whether that theory was advanced by the State in its case in chief. The State's argument is misplaced. The issue is not whether the trial court could have given an accountability instruction based on the evidence, but whether the court violated defendant's due process rights by giving the accountability instruction after the jury had already begun its deliberations.

Defendant argues that the timing of the trial court's instruction deprived him of his right to address the accountability issue in his closing argument. The closest case factually that our research discloses is *People v. Jamison*, 207 Ill. App. 3d 565 (1991). In *Jamison*, the de-

fendant was charged with residential burglary. Evidence suggested that there might have been two offenders involved in the burglary. The parties focused their closing arguments on whether defendant was guilty as a principal, and the trial court did not give the jury an accountability instruction. The jury sent the judge a question that asked, "Can a person who was an accomplice to Residential Burglary not entering into the home be charged with Residential Burglary?" Over the defendant's objection, the trial court instructed the jury on accountability. *Jamison*, 207 Ill. App. 3d at 567.

The appellate court held that the trial court abused its discretion in giving an accountability instruction after the jury had begun its deliberations. The court noted that the instructions referred only to the defendant's guilt as a principal, and therefore the parties limited their arguments to whether defendant was guilty as a principal. The *Jamison* court held that the supplemental instruction allowed the defendant to be convicted on a theory that was never addressed. The court also rejected the State's argument that the error was harmless. *Jamison*, 207 Ill. App. 3d at 568.

The Ninth Circuit Court of Appeals reached the same conclusion in *United States v. Gaskins*, 849 F.2d 454 (9th Cir. 1988). In *Gaskins*, the defendant was charged with possessing and manufacturing methamphetamine. The prosecution tried the defendant as a principal. At the close of the evidence, the trial court denied the prosecution's request that the jury be instructed on aiding and abetting. In response to a jury question, the prosecution again asked that the jury be instructed on aiding and abetting. The court gave the instruction over the defendant's objection, and the jury convicted the defendant. *Gaskins*, 849 F.2d at 455-57.

On appeal, the defendant argued that his attorney's argument to the jury had been based on the prosecution's

theory that he was guilty as a principal. His attorney did not have a chance to respond to the aiding and abetting theory. The government argued that the instruction was not prejudicial because the court merely clarified the instructions at the jury's request. The Ninth Circuit agreed with the defendant and reversed his conviction. The court relied on Rule 30 of the Federal Rules of Criminal Procedure, which requires the trial court to inform the parties how the jury will be instructed before the attorneys give their closing arguments. The court held that the defendant had been prejudiced by the Rule 30 violation because the elements necessary to convict a defendant as a principal are different from those necessary to convict him as an aider and abettor, and the defendant had not been given a chance to address the aiding and abetting theory. Because the court could not conclude that the effectiveness of the defendant's defense was not hampered by the defendant's inaccurate information regarding the court's instructions, the court held that the defendant must be given a new trial. *Gaskins*, 849 F.2d at 458-60.

We agree with *Jamison* and *Gaskins*. Illinois has a provision similar to Rule 30. Section 2—1107(c) of the Code of Civil Procedure (735 ILCS 5/2—1107(c) (West 1998) (made applicable to criminal cases by Supreme Court Rule 451(c) (177 Ill. 2d R. 451(c))) requires that jury instructions be settled before the attorneys give their closing arguments:

> "The court shall hold a conference with counsel to settle the instructions and shall inform counsel of the court's proposed action thereon prior to the arguments to the jury."

The purpose of this section is obvious: it allows the attorneys to know the law on which the jury will be instructed so that the attorneys can tailor their arguments accordingly. Because the court in this case instructed the jury on accountability after the jury had

begun its deliberations, defendant's attorney was entirely deprived of an opportunity to defend against that theory.

Significantly, the court's response to the jury's question not only violated a statutory procedure, it impinged upon a constitutional right. The United States Supreme Court held in *Herring v. New York*, 422 U.S. 853, 857-59, 45 L. Ed. 2d 593, 598, 95 S. Ct. 2550, 2553-54 (1975), that a defendant's right to make a closing argument is guaranteed by the Constitution. The *Herring* Court quoted with approval the following passage from *Yopps v. State*, 228 Md. 204, 178 A.2d 879 (1962):

> " 'The Constitutional right of a defendant to be heard through counsel necessarily includes his right to have his counsel make a proper argument on the evidence and the applicable law in his favor, however simple, clear, unimpeached, and conclusive the evidence may seem, unless he has waived his right to such argument, or unless the argument is not within the issues in the case, and the trial court has no discretion to deny the accused such right.' "
> *Herring*, 422 U.S. at 860, 45 L. Ed. 2d at 599, 95 S. Ct. at 2554, quoting *Yopps*, 228 Md. at 207, 178 A.2d at 881.

The Supreme Court further elaborated:

> "The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment." *Herring*, 422 U.S. at 862, 45 L. Ed. 2d at 600, 95 S. Ct. at 2555.

In *Herring*, the defendant was completely denied the opportunity to make a closing argument. Here, defendant was not completely deprived of his right to make a closing argument, but he was denied his right to address the theory of guilt upon which he may have been convicted. The jury's question showed that the jury had some doubt as to whether defendant was the person who injured Drwiega's face. The jury apparently believed that

there was a second intruder and that defendant might have been the second intruder. Defendant argues on appeal that the evidence of a second intruder was sketchy and that he was denied the opportunity to argue that there was no second intruder. There would have been no reason for him to make that argument in the absence of an accountability instruction; the State charged him with being the person who injured Drwiega and argued that to the jury.

Further, the elements that the State would have had to prove to establish defendant's guilt as an accomplice are different from those necessary to prove his guilt as a principal. To prove his guilt as a principal, the State would have had to prove the statutory elements of home invasion and robbery. See 720 ILCS 5/12—11(a)(2), 18—1(a) (West 1996). To prove his guilt as an accomplice, the State would have had to prove (1) that defendant solicited, ordered, abetted or attempted to aid another in the planning or commission of the crime; (2) that defendant's participation took place before or during the commission of the crime; and (3) the defendant had the concurrent, specific intent to promote or facilitate the commission of the crime. 720 ILCS 5/5—2 (West 1996). Defendant was denied his right to address the jury on these elements.

When faced with the jury's question, the court should have told the jurors that they had the instructions applicable to this case and that they should keep deliberating. The State elected to charge defendant as a principal and to argue that defendant was guilty as a principal. If, as the State insists, an accountability instruction was appropriate in this case, the State should have asked for such an instruction at the proper time. It was too late for the State to change its theory of the case after the case had been sent to the jury. The court should not submit new charges or new theories to the jury after the jury commences its deliberations. *Gramc*, 271 Ill. App. 3d at 288-89.

The State argues that any error in the instruction was harmless because defendant's theory of the case was that he had nothing to do with the offense. The State points out that defendant never contested that there were two offenders.

Clearly, the court's error was not harmless. The Constitution guarantees defendants the right to make a closing argument, no matter how " 'simple, clear, unimpeached, and conclusive the evidence may seem.' " *Herring*, 422 U.S. at 860, 45 L. Ed. 2d at 599, 95 S. Ct. at 2554, quoting *Yopps*, 228 Md. at 207, 178 A.2d at 881. The State charged defendant as a principal and argued to the jury that defendant injured Drwiega and took her money. In response to a jury question that indicated that the jury was having doubts whether defendant injured Drwiega, the court gave an accountability instruction. The jury then convicted defendant. On these facts, defendant was possibly convicted based upon a theory that he was never given a chance to address. Defendant was entirely deprived of his right to make a closing argument controverting one of the State's theories of guilt. As the Supreme Court said in *Herring*:

> "There is no way to know whether these or any other appropriate arguments in summation might have affected the ultimate judgment in this case. The credibility assessment was solely for the trier of fact. But before that determination was made, the appellant, through counsel, had a right to be heard in summation of the evidence from the point of view most favorable to him." *Herring*, 422 U.S. at 864, 45 L. Ed. 2d at 602, 95 S. Ct. at 2556.

Defendant was deprived of his due process right to a fair trial. Consequently, his convictions must be reversed and the cause remanded for a new trial.

*Judgments reversed;*
*cause remanded.*