2019 IL App (3d) 160709

Opinion filed August 27, 2019

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-16-0709 |
| v. | ) | Circuit No. 16-CF-180 |
| | ) | |
| ORLANDO CHARLES ALEXANDER, | ) ) | Honorable John P. Vespa, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justice Wright concurred in the judgment and opinion.
Justice Carter dissented, with opinion.

**OPINION**

¶ 1        The defendant, Orlando Charles Alexander, appeals from his conviction for unlawful possession of a weapon by a felon.

¶ 2                                                FACTS

¶ 3        The defendant was charged with unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2016)). At trial, the State alleged that the defendant ran from a traffic stop with a gun in his hand. Officers gave chase and found the defendant hiding by a porch, and the gun was found discarded on the defendant's route.

¶ 4        City of Peoria police officer David Logan testified that he attempted to effectuate a traffic stop around 7:30 p.m. on March 8, 2016, on a black Chrysler vehicle after he observed it cross the center line. Logan activated his lights, and the Chrysler pulled to the curb but then fled from the curb after Logan and his partner had exited their vehicle. Logan radioed what had happened and received a radio transmission from City of Peoria police officer Bryan Sylvester stating that Sylvester had located the vehicle and people were running from the vehicle. Logan testified that Sylvester stated over the radio that one person was running eastbound with a gun in his hand. Logan's report indicated that Sylvester stated that both males ran east from the vehicle and were armed with guns. Logan's report stated that the gun was found in the path of the defendant's flight.

¶ 5        Sylvester testified that he had put out a radio transmission on March 8 for assistance in stopping a black Chrysler. When Logan indicated that he was stopping the vehicle, Sylvester drove on a parallel street in the area. After the black Chrysler fled the stop, it turned on the street in front of Sylvester. Sylvester testified that the Chrysler came to a stop and two males exited on foot. Sylvester described one as tall, wearing a white sweatshirt and stonewashed jeans. The other male was shorter, wearing dark clothing. Sylvester identified that taller male as the defendant. Sylvester testified that he was about 20 feet away, with his headlights on, when he saw the defendant exit the vehicle with a large, black semiautomatic firearm. The defendant fled eastbound down a driveway, continuing between the houses. The other male, in black clothing, also initially ran east, but just to the sidewalk, and then proceeded southbound. Sylvester attempted to follow the defendant, but when the defendant turned north, Sylvester went back to the sidewalk and ran north to the street. The defendant was found by other officers by a house on

2

the next street. The other male was found by other officers in a nearby backyard. The gun was found in the garden area next to the driveway that the defendant ran down.

¶ 6　　　　Sean Johnston, also a police officer with the City of Peoria, testified that he responded to help locate the two males that fled from the Chrysler. He parked one street over to the east and began searching the yards. Johnston found the defendant hiding underneath a deck of a house on that street. The defendant was wearing a white sweatshirt.

¶ 7　　　　Sergeant James Chiola testified that he followed the path that Sylvester told him that the defendant took and found a semiautomatic firearm on the other side of the fence along the driveway, about 15 to 18 feet from the driveway. Chiola testified that the gun was about 60 feet from the sidewalk in front of the house. It was a black Beretta, a .22 caliber. There was dirt on top of the gun, as if it had been freshly thrown, and no moisture on it.

¶ 8　　　　Officer Brock Lavin testified that the other male was located in the backyard of a house on the street where the Chrysler stopped, about a half a block away. Officer Brittany Martzluf, a member of the Peoria Police Department Crime Scene Unit, described the gun as a .22 caliber. It was laying in the yard and had some dirt on it that Martzluf described as fresh. The gun had no moisture on it. She took custody of the gun and swabbed it for potential DNA and tested it for fingerprints. She did not find any fingerprints. Ann Yeagle, a forensic scientist employed by the Illinois State Police, testified that there was some DNA on the gun but not in a sufficient amount to make a comparison to the defendant. She could not include or exclude anyone based on the incompleteness of the DNA profile.

¶ 9　　　　The defendant's sister, Lantrese Alexander, testified that she was driving the Chrysler and the defendant was in the back seat along with the other male. She pulled over for the police, but then drove off because she was driving with no insurance and no license and she panicked.

When she pulled over again, everyone ran out of the car. Lantrese testified that her brother did not have a gun but she saw the other male passenger with a gun.

¶ 10        During closing argument, the State argued that Sylvester had seen the defendant run with the gun in his hand. The State also pointed to the circumstantial evidence that the gun was found in the defendant's path. The defense argued that the other male had the gun and he could have thrown it in the same yard—it was a longer throw, but a better angle.

¶ 11        The trial court instructed the jury, and the jury began deliberations. However, the jury then submitted a question to the court: "What is the definition of 'possession' in accordance with the law?" The jury instructions had not included an instruction defining possession. The State proposed that the jury be given the Illinois Pattern Jury Instruction defining "possession." The instruction stated:

> "Possession may be actual or constructive. A person has actual possession when he has immediate and exclusive control over a thing. A person has constructive possession when he lacks actual possession of a thing but he has both the power and the intention to exercise control over a thing either directly or through another person." See Illinois Pattern Jury Instructions, Criminal, No. 4.16 (4th ed. 2000) (hereinafter IPI Criminal 4th).

The defense objected to the giving of any instruction, but the jury was given the instruction and continued deliberating. The jury then returned a guilty verdict.

¶ 12        The defense filed a posttrial motion for judgment notwithstanding the verdict or for a new trial. One issue raised in the motion was the extra instruction given to the jury, arguing that it violated the defendant's right to due process and was more prejudicial than probative. When arguing the motion, defense counsel argued that including the definition of constructive possession introduced an additional charge to the jury that the defendant had not defended

4

against. The trial court denied the motion and proceeded to sentencing, imposing a sentence of six years in prison. The defendant appealed.

¶ 13                                    ANALYSIS

¶ 14        The defendant argues that the trial court abused its discretion by instructing the jury on the definition of possession after the jury had begun its deliberations. The defendant acknowledges that his posttrial motion was untimely because it was filed more than 30 days after the verdict but contends the issue can be reached. The State argues that the defendant forfeited review of the issue because his posttrial motion was untimely but, in any event, the trial court did not abuse its discretion or plainly err in giving the supplemental jury instruction.

¶ 15        Ordinarily, to preserve an issue for review, a party must raise it at trial and in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 190 (1988). In this case, defense counsel challenged the instruction when it was given. However, the defendant's posttrial motion was not timely since it was filed seven weeks after the jury verdict was returned. See 725 ILCS 5/116-1(b) (West 2016) (a written motion for a new trial shall be filed within 30 days following the return of a verdict). The posttrial motion was filed prior to sentencing and entry of final judgment, though, and the trial court ruled on the motion. See *People v. Salem*, 2016 IL 118693, ¶ 13 (noting that a trial court has jurisdiction to consider untimely posttrial motions filed within the 30-day period following the entry of final judgment). Since the State did not challenge the timeliness of the posttrial motion and the trial court ruled on the motion, we find the State's objection to be waived and that the defendant did not forfeit the jury instruction issue. See *People v. Raibley*, 338 Ill. App. 3d 692, 698 (2003) (the State waived the issue of timeliness by not arguing the issue). The timeliness of the posttrial motion does not affect our appellate jurisdiction in this case because the notice of appeal was filed within 30 days of the entry of the

5

final order. See Ill. S. Ct. R. 606(b) (eff. Dec. 11, 2014) (notice of appeal must be filed within 30 days after the entry of the final judgment appealed from or within 30 days after the entry of the order disposing of a timely-filed motion directed against the judgment); see also *Salem*, 2016 IL 118693, ¶ 12 (compliance with Rule 606(b) is required for appellate jurisdiction).

¶ 16    The defendant argues that the State had argued actual possession during the defendant's trial and the jury instruction given during deliberations introduced the theory of constructive possession to the jury. The defendant contends that he had the opportunity to argue that the State failed to prove actual possession but he was unable to refute the new theory of constructive possession because it was not raised during trial. The State contends that the possession instruction was an accurate statement of law and accurately answered the jury's question.

¶ 17    Jury instructions are to be settled before closing arguments. See 735 ILCS 5/2-1107(c) (West 2016); Ill. S. Ct. R. 451(c) (eff. July 1, 2006). A jury is entitled, though, to receive further instruction if it has a question during deliberations. *People v. Leach*, 2011 IL App (1st) 090339, ¶ 15. When faced with a question from a jury, a trial court should exercise its discretion in answering or refraining from answering the jury question. *People v. Millsap*, 189 Ill. 2d 155, 161 (2000). However, "[i]f the trial court provides instruction to the jury mid deliberation, it must refrain from submitting instructions on new case theories." *People v. Brown*, 406 Ill. App. 3d 1068, 1079 (2011) (citing *Millsap*, 189 Ill. 2d at 161).

¶ 18    Both parties agree that IPI Criminal 4th No. 4.16 accurately stated the law, although the defendant contends that it should not have been given because there was no evidence at trial of joint or constructive possession. See IPI Criminal 4th No. 4.16, Committee Note ("When there is no evidence that the possession was either constructive or joint *** it generally will be unnecessary to instruct the jury regarding the definition of possession."). The defendant's

6

primary challenge to the instruction, though, is that it introduced a new theory into the case—constructive possession. Actual possession and constructive possession are two theories under which a defendant may be proved guilty of the offense of possession. *People v. Dismuke*, 2013 IL App (2d) 120925, ¶ 16. Actual possession may be proven by testimony of some form of dominion over the object, while constructive possession is proven with evidence of the defendant's intent and capability to maintain control and dominion over the object. *Id.* In this case, we agree that the jury instruction given during deliberations introduced constructive possession as a new theory in the case and the defendant was denied the opportunity to address that theory. See *Millsap*, 189 Ill. 2d at 165 (accountability instruction during deliberations was reversible error because the defendant was charged as a principal and instruction introduced new theory); but see *Brown*, 406 Ill. App. 3d at 1080 (no abuse of discretion in giving an initial-aggressor instruction during deliberations because there was evidence on that issue and it was not injecting a new theory into the case).

¶ 19      The error was not harmless, and the defendant was deprived of his due process right to a fair trial. The State argued and attempted to prove that the defendant had actual possession of the gun. In response to a jury question that indicated that the jury was having doubts about that possession, the trial court gave a possession instruction that introduced the theory of constructive possession. The jury then convicted the defendant. On these facts, it is possible that the defendant was convicted based upon a theory that he was never given the chance to address. He was deprived of his right to make a closing argument challenging one of the State's theories of guilt.

¶ 20      We are reversing the defendant's conviction because of an error in the proceedings, but we find that, viewing the evidence in the light most favorable to the State, a rational trier of fact

could have found the defendant actual possessing the gun beyond a reasonable doubt. Thus, double jeopardy does not bar a retrial of the defendant in this case. See *People v. Lopez*, 229 Ill. 2d 322, 366-68 (2008).

¶ 21                                                    CONCLUSION

¶ 22        The judgment of the circuit court of Peoria County is reversed and remanded for a new trial.

¶ 23        Reversed and remanded.

¶ 24        JUSTICE CARTER, dissenting:

¶ 25        I agree that it was error for the trial court to give IPI Criminal 4th No. 4.16 after closing arguments because doing so improperly introduced the theory of constructive possession into the case. See *Millsap*, 189 Ill. 2d at 161 (when faced with a question from the jury and the trial court provides an instruction to the jury mid deliberations, the trial court must refrain from submitting instructions on new case theories). Additionally, as the majority indicates (*supra* ¶ 18), the committee note to IPI Criminal 4th No. 4.16 states where there is no evidence that possession was either constructive or joint, then it will generally be unnecessary to instruct the jury regarding the definition of possession. Notably, the committee note also specifically states that IPI Criminal 4th No. 4.16 should only be given "when there is an issue as to whether the defendant was in constructive possession" or "joint possession." IPI Criminal 4th No. 4.16, Committee Note.

¶ 26        However, I dissent from the majority's decision because the trial court's error in giving the instruction was harmless and defendant was not deprived of his constitutional right to due process. The test for a harmless constitutional error is whether the error was harmless beyond a reasonable doubt. *People v. Wilkerson*, 87 Ill. 2d 151, 157 (1981). In assessing whether the error

8

was harmless, we look to whether (1) the error contributed to the conviction, (2) the evidence overwhelming supports the conviction, or (3) determining whether improperly admitted evidence is cumulative or merely duplicates properly admitted evidence. *Id.*; *People v. Patterson*, 217 Ill. 2d 407, 428 (2005).

¶ 27   In *Millsap*, the defendant was charged with home invasion and robbery, and the evidence suggested that there was more than one offender. *Millsap*, 189 Ill. 2d at 156-59. The State did not pursue an accountability theory, and neither party requested a jury instruction on accountability or argued accountability during closing arguments. *Id.* at 159. After the jury began deliberations, the jury sent a note to the court asking whether an accomplice is just as guilty as the offender who causes an injury in a home invasion. *Id.* The trial court gave the jury an accountability instruction, over defendant's objection. *Id.* at 159-60. Subsequently, the jury found the defendant guilty on both charges, and defendant's convictions were affirmed on appeal. *Id.* Our supreme court concluded that the trial court erred in giving the instruction because it impinged on defendant's constitutional right to give a closing argument where "he was denied his right to address the theory of guilt upon which he may have been convicted." *Id.* at 164. Our supreme court concluded that the trial court's error in giving the accountability instruction was not harmless because he was deprived of his due process right to a fair trial where "defendant was possibly convicted based upon a theory that he was never given a chance to address" and was deprived of his right to make a closing argument to controvert one of the State's theories of guilt. *Id.* at 166.

¶ 28   Here, although it was error to give jury instruction No. 4.16 in this case, I do not believe the trial court's error in giving the instruction warrants a reversal. There was considerable evidence to support a guilty verdict and the inclusion of the erroneous jury instruction could not

9

have impacted the verdict where there was no evidence or argument upon which jurors could have found defendant in constructive possession of the weapon. There was no evidence, argument, or jury question that the suspect lacked actual possession of the gun but only had the power and intent to exercise constructive control over it. See IPI Criminal 4th No. 4.16. There was only evidence regarding three different scenarios: defendant ran out of the car with the gun in his hand, both defendant and the other male who was with defendant each had guns in their hands, or only the other male had a gun in his hand. In other words, the only evidence at trial was that either defendant had immediate and exclusive control of the gun (actual possession) or he did not. There was no evidence presented or argument made that defendant could have had constructive possession of the gun upon which the jury could have convicted based on that theory and, thus, the error could not have contributed to defendant's conviction. Thus, I believe the trial court's error in giving the instruction was harmless beyond a reasonable doubt because the error could not have contributed to the conviction and the evidence overwhelmingly supports the conviction based on the defendant's actual possession of a gun.

**No. 3-16-0709**

| | |
|---|---|
| **Cite as:** | *People v. Alexander*, 2019 IL App (3d) 160709 |
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, No. 16-CF-180; the Hon. John P. Vespa, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Peter A. Carusona, and James Wozniak, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Jerry Brady, State's Attorney, of Peoria (Patrick Delfino, Thomas D. Arado, and Jasmine D. Morton, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |