**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 170755-U

Order filed February 25, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0755 Circuit No. 16-CF-1544 |
| FRED MACK JR., | ) ) ) | Honorable Carla Alessio-Policandriotes, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Justice Holdridge concurred in the judgment.
Presiding Justice McDade, dissented.

**ORDER**

¶ 1     *Held*:  The circuit court did not abuse its discretion in stopping jury deliberations to reinstruct the jury with the correct definition of sexual penetration. The record does not support defendant's contention that the State argued that defendant was guilty based on an uncharged act.

¶ 2     Defendant, Fred Mack Jr., appeals his conviction for predatory criminal sexual assault of a child. Defendant argues that the Will County circuit court erred when it stopped jury deliberations to reinstruct the jury with a different definition of sexual penetration. Defendant also argues that

plain error occurred when the State argued during its closing argument that defendant was guilty based on an uncharged act that was only admissible as propensity evidence. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        A grand jury charged defendant with predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2004)). The indictment alleged that on or between September 11, 2002, and July 28, 2004, defendant knowingly committed an act of sexual penetration with B.H. by placing his finger in B.H.'s vagina. The indictment alleged that, at the time of the incident, defendant was 17 years old or older and B.H. was under 13 years old.

¶ 5        The State filed a motion *in limine* to present other-crimes evidence, namely, a recording of defendant's interview with the police and B.H.'s testimony about other incidents involving defendant. The court granted the motion, ruling that the State would be permitted to introduce propensity evidence at the trial. The court further ordered that the jury would be given limiting instructions concerning this evidence several times throughout the trial.

¶ 6        The matter proceeded to a jury trial. B.H. testified that she was 26 years old at the time of the trial. Defendant previously lived with B.H.'s aunt, Renee Lockhart. When B.H. was a child, defendant sometimes picked her up from school, babysat her, and bought her gifts. On some occasions, B.H. and defendant were alone at Lockhart's house. During those times, defendant sexually abused B.H. The abuse started when B.H. was four years old. In the beginning, it would happen two to three times per week. Defendant would kiss her vagina, insert his finger into her vagina, and simulate sexual intercourse with clothes on. When B.H. got older, defendant would kiss her, put his mouth on her breasts, and place his penis in her mouth. When B.H. was approximately 10 years old, defendant attempted to insert his penis into her vagina on one

occasion. Initially, B.H. said that defendant's penis was "kind of in [her] vagina," and she later said that it was in her vagina.

¶ 7　　　　When B.H. was 11 to 12 years old, defendant inserted his finger into her vagina at least 10 times. Defendant would initiate these encounters while he and B.H. were watching television in the living room at Lockhart's house. Sometimes the encounters occurred in defendant's bedroom. B.H. never initiated the encounters. After the abuse, defendant sometimes told B.H. that they had to wait until they were married. He often referred to her as his wife. When B.H. was approximately 12 years old, defendant told her she should start thinking of him as her uncle. He did not sexually abuse her after that. B.H. did not tell anyone about the abuse until she was 19 years old. She came forward to the police when she was 24 years old.

¶ 8　　　　Kenneth Simpson, a retired detective, testified that he interviewed defendant in connection with the instant case. The interview was recorded. During the interview, defendant stated that he had approximately 25 sexual encounters with B.H. when she was seven to nine years old. Between September 11, 2002, through July 28, 2004, when B.H. was 11 to 12 years old, defendant would have been 50 to 52 years old.

¶ 9　　　　The court admitted a video recording of Simpson's interview with defendant into evidence and allowed the State to play it for the jury. On the recording, defendant admitted to engaging in sexual contact with B.H. at Lockhart's house. Defendant said that on several occasions, he touched B.H.'s vaginal area over her underwear, and she touched his penis. On one occasion, defendant's penis touched B.H.'s tongue. One time, defendant placed his mouth on B.H.'s vagina. Defendant said he may have touched B.H.'s vaginal area under her underwear once. On one occasion, defendant's penis touched B.H.'s vagina, but it did not enter her vagina. Defendant stated that B.H. initiated these encounters, and he allowed it to happen because he was sexually lonely. This

occurred when B.H. was between seven and nine years old. Defendant estimated he had a maximum of 25 sexual encounters with B.H. Defendant eventually told B.H. that it was wrong and they could not have sexual contact anymore. He told her they would be together when she was older if it was God's will.

¶ 10    Defendant testified that he did not digitally penetrate B.H. between September 11, 2002, and July 28, 2004. Defendant's mother died in 2000, and he had no sexual contact with B.H. after that. All the sexual contact that defendant had with B.H. occurred when B.H. was seven to nine years old. Defendant said the statements he made on the recording of his interview with Simpson were accurate. Defendant maintained that he had never inserted his finger into B.H.'s vagina. Defendant admitted that he called B.H. his wife.

¶ 11    During the jury instruction conference, the parties agreed to give the jury the following version of Illinois Pattern Jury Instructions, Criminal, No. 11.65E (4th ed. 2000): "The term 'sexual penetration' means any contact, however slight, between the sex organ or anus of one person and the sex organ of another person."

¶ 12    During the State's closing argument, the prosecutor stated:

"And I know that you've heard throughout the course of this case the kind of abuse incurred upon [B.H.] The defendant's mouth on her vagina, her mouth on his penis. The defendant's hand on her vagina, her hand on his penis. Most importantly, she told you that the defendant put his finger on her vagina when she was between 11 and 12 years old approximately ten times. And that's what he's charged with today is that he digitally penetrated her when she was in junior high between the ages of 11 and 12."

¶ 13    The State noted that to prove defendant guilty of predatory criminal sexual assault of a child, it had to prove that defendant knowingly committed an act of sexual penetration with B.H. The State argued: "Ladies and gentlemen, this was not done by mistake. This defendant didn't accidentally put his finger inside of her. He knowingly committed the act of sexual penetration. He digitally penetrated her vagina."

¶ 14    The State discussed how the age requirements for the offense had been met. The State then argued:

> "The other instruction that I wish to talk about is one which is one sentence. It says, the term sexual penetration means any act, however slight, between the sex organ or anus of one person and the sex organ of another person. Yes, there's a definition for sexual penetration, and it is however slight. Doesn't matter. I don't know if she was even asked how far did it go in. It doesn't matter. However slight."

¶ 15    The State then discussed the fact that other-crimes evidence had been introduced in the case. The State argued: "The charge is the digital penetration by the defendant upon [B.H.] The other sex acts that you heard can be used for propensity. The defendant committed those other sex acts, so he has the propensity, he has the intent, the motive to commit the one charge."

¶ 16    During defendant's closing argument, defense counsel stated: "[W]e are here because [defendant] did not do the crime that's charged that stands before you. [Defendant] did not commit the offense of predatory criminal sexual assault of a child in that he placed his finger in the vagina of [B.H.], a minor." Defense counsel noted that defendant had admitted that he engaged in various sexual acts with B.H. until 2000. Defense counsel stated that the trial only concerned one offense that happened between September 11, 2002, and July 28, 2004. Defense counsel noted that the

evidence of other offenses could only be used by the jury to determine propensity, intent, motive, and design. Defense counsel argued: "You are surely tempted to convict him based on these bad acts that he did. I understand that. But those are in the past and we're here on this. We're here on one count only. September 11th, 2002 to July the 28th in the year 2004." Defense counsel then argued:

> "[The State] read a jury instruction to you a little bit ago, a couple actually, and the term sexual penetration was read to you. Nowhere that I heard in this testimony was there anything about or anything in the—strike that. There's nothing in the Bill of Indictment as charged alleging anything about an anus. Read that closely, ladies and gentlemen."

¶ 17    After closing arguments, the court read the jury the instructions that the parties had previously discussed.

¶ 18    During deliberations, the jury requested to see a copy of the indictment, which had been admitted into evidence. The parties agreed to this request. The prosecutor then stated that he had noticed that the instruction on sexual penetration that the court gave the jury was not applicable to the case. The court agreed that the instruction given to the jury did not correctly state the law. Defense counsel objected to the jury being given a new instruction. The court said that it would not give the jury a new instruction unless they requested clarification. The court sent a copy of the bill of indictment to the jury.

¶ 19    Later, the court called the attorneys back into the courtroom. The court said that it had ordered the jury to stop deliberating. The court stated that it was the court's burden to make sure the jury was properly advised of the law they were required to follow. Over defense counsel's objection, the court called the jurors in and reinstructed them on the definition of sexual

penetration. The court told the jury that it had given the jury a definition "in error." The court stated that it was going to read the correct definition to the jury and requested that they disregard the previous instruction. The court then gave the jury the following instruction: "The term sexual penetration means any intrusion, however slight, of any part of the body of one person into the sex organ of another person; including, but not limited to, cunnilingus, fellatio and penetration." A short time later, the jury rendered a verdict of guilty.

¶ 20    Defense counsel moved for a mistrial based on the court's reinstruction of the jury, and the court denied the motion.

¶ 21    The court sentenced defendant to 10 years' imprisonment.

¶ 22                                II. ANALYSIS

¶ 23                          A. Reinstruction of the Jury

¶ 24    Defendant argues that the court erred in interrupting jury deliberations and reinstructing the jury with a new definition of sexual penetration. Defendant contends that the new instruction presented a new theory of criminal liability to the jury and completely changed the type of sexual contact the State was required to prove. Defendant also argues that the new instruction prevented him from presenting a proper closing argument. Defendant asserts that defense counsel tailored his closing argument to the definition of sexual penetration initially submitted to the jury. The parties agree that the standard of review is abuse of discretion. See *People v. Laabs*, 2011 IL App (3d) 090913, ¶ 18.

¶ 25    "It is well established that it is the duty of the trial court to accurately instruct the jury as to the law to be applied in a given case." *People v. Watson*, 26 Ill. App. 3d 1081, 1085 (1975). Jury instructions are required to be settled before closing arguments. *People v. Millsap*, 189 Ill. 2d 155, 163 (2000). The purpose of this requirement is to "allow[ ] the attorneys to know the law on

which the jury will be instructed so that the attorneys can tailor their arguments accordingly." *Id.* "[T]he court should not submit new charges or new theories to the jury after the jury commences its deliberations." *Id.* at 161.

¶ 26        We find the decision in *People v. Johnson*, 285 Ill. App. 3d 307 (1996) to be instructive. In *Johnson*, the defendant was charged with knowingly resisting a peace officer during a *Terry* stop. *Id.* at 308. The State tendered a jury instruction that stated: " 'A person is not authorized to use force to resist an arrest which he knows is being made by a peace officer, even if he believes that the arrest is unlawful and the arrest in fact is unlawful.' " *Id.* at 308-09. The defendant did not object, and the instruction was given to the jury. *Id.* at 309. During deliberations, the jury sent a note asking if they could substitute the phrase "authorized act" for the word "arrest" in the instruction. *Id.* Over the defendant's objection, the court amended the jury instruction to state " 'authorized act or arrest.' " *Id.* On appeal, the *Johnson* court held that the circuit court properly amended the instruction because the pattern instruction that it had initially given did not adequately state the law as it applied to the case. *Id.* at 310.

¶ 27        Here, like in *Johnson*, the instruction submitted to the jury did not adequately state the law as applied to the case. Section 12-12(f) of the Criminal Code of 1961 (720 ILCS 5/12-12(f) (West 2004)) provided:

> " 'Sexual penetration' means any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth, or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person \*\*\*."

The portion of the above definition that applied to the conduct charged in the instant case was "any intrusion, however slight, of any part of the body of one person *** into the sex organ *** of another person." *Id.* The original jury instruction described another part of the definition of sexual penetration—contact between sex organs—which did not apply to the conduct charged in the instant case. It was the court's duty to accurately instruct the jury as to the law, and the court acted within its discretion in amending the instruction to accurately state the definition of sexual penetration that applied to this case.

¶ 28 Even if we were to find that the new instruction was improper because it was given after jury deliberations commenced (see *Millsap*, 189 Ill. 2d at 163), any error would be harmless. The new instruction did not cause unfair surprise or prejudice to defendant. The State's theory of liability throughout the case was that defendant committed an act of sexual penetration with B.H. in that he digitally penetrated her vagina. Defendant responded to this theory of liability during his closing argument. Specifically, defendant argued that, although he had engaged in sexual contact with B.H. when she was younger, he did not digitally penetrate her when she was 11 to 12 years old as charged in the indictment.

¶ 29 We reject defendant's reliance on *Millsap*, 189 Ill. 2d 155. In *Millsap*, the defendant was convicted of home invasion and robbery. *Id.* at 159-60. Although there was evidence that two individuals participated in the offenses, the State never pursued an accountability theory, did not request that the jury be instructed on accountability, and did not argue to the jury that the defendant was guilty based on an accountability theory. *Id.* at 159. During jury deliberations, the jury sent a question to the court asking whether an accomplice was just as guilty as the offender who causes injury in a home invasion. *Id.* In response to this question, the court instructed the jury on accountability. *Id.* at 159-60. On appeal, the court held that the defendant was deprived of his due

process right to a fair trial because he was denied his right to address in closing arguments the theory of guilt upon which he may have been convicted. *Id.* at 165-66.

¶ 30    Here, unlike in *Millsap*, the new instruction on the definition of sexual penetration did not introduce a new theory of liability that defendant was unable to address during closing argument. The State's theory of liability throughout the case was that defendant committed an act of sexual penetration by digitally penetrating B.H.'s vagina. The indictment charged defendant with this conduct, and the State asserted repeatedly during its closing argument that this was the only charge before the jury. The defense was clearly aware that this was the State's theory of liability, and defendant's theory of defense was directly responsive to it. Defense counsel explicitly stated during closing argument that defendant did not commit the charged offense because he did not digitally penetrate B.H.'s vagina.

¶ 31    We acknowledge that defense counsel argued during closing argument that the State's definition of sexual penetration did not apply because the indictment did not allege "anything about an anus." However, even under the incorrect definition of sexual penetration initially given to the jury, the State was not required to prove anal penetration. Rather, the incorrect definition initially required a showing of contact between the sex organ of one person and the sex organ *or* anus of another person. Moreover, defense counsel's comments about the definition of sexual penetration were only a small part of his closing argument. As discussed previously, the crux of defense counsel's closing argument was that, while defendant engaged in sexual contact with B.H. when she was younger, defendant did not digitally penetrate B.H. when she was 11 to 12 years old.

¶ 32                              B. Closing Argument

¶ 33 Defendant argues that plain error occurred when the State argued during its closing argument that defendant was guilty of an act of sexual penetration that was not charged in the indictment. Specifically, defendant contends that the following statement was improper:

> "The other instruction that I wish to talk about is one which is one sentence. It says, the term sexual penetration means any act, however slight, between the sex organ or anus of one person and the sex organ of another person. Yes, there's a definition for sexual penetration, and it is however slight. Doesn't matter. I don't know if she was even asked how far did it go in. It doesn't matter. However slight."

Defendant argues that, in making this statement, the State must have been referring to the incident where defendant penetrated B.H.'s vagina with his penis when she was 10 years old because this was the only conduct that fit the definition of sexual penetration given by the State. Defendant contends that this was improper because this conduct was not charged and was only admitted to show propensity.

¶ 34 Defendant admits that this issue was not preserved for appeal but requests that we review the issue for plain error. Under the plain error doctrine, a reviewing court may consider an unpreserved claim of error when a clear and obvious error occurred and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). "The first step of plain-error review is determining whether any error occurred." *Id.*

¶ 35    In the instant case, no error occurred. The record does not support defendant's interpretation of the challenged portion of the State's closing argument. The prosecutor stated repeatedly throughout his closing argument that defendant had been charged with digital penetration. The prosecutor also expressly stated that the evidence of offenses other than digital penetration could be used by the jury only to determine defendant's propensity to commit the charged offense. While it is true that the incident in which defendant penetrated B.H.'s vagina with his penis is the only one that meets the definition of sexual penetration given by the State, the prosecutor did not specifically refer to this incident when discussing the definition of sexual penetration. Given the prosecutor's repeated assertions throughout closing argument that defendant was charged with digital penetration, we believe that it is clear that the prosecutor was referring to digital penetration when making the comments challenged by defendant. Accordingly, defendant's contention that the State argued during closing argument that defendant was guilty of the charged offense based on uncharged conduct is not supported by the record.

¶ 36                                III. CONCLUSION

¶ 37    For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 38    Affirmed.

¶ 39    JUSTICE McDADE, dissenting:

¶ 40    I believe that reversible error occurred when the court reinstructed the jury concerning the definition of sexual penetration during jury deliberations rather than granting defendant's motion for a mistrial. Accordingly, I respectfully dissent.

¶ 41    Jury instructions should be settled before closing arguments so that the attorneys may tailor their arguments to the law on which the jury may be instructed. *Millsap*, 189 Ill. 2d at 163. "[T]he

court should not submit new charges or new theories to the jury after the jury commences its deliberations." *Id.* at 161.

¶ 42 Here, the parties centered their closing arguments around an incorrect definition of sexual penetration. While the prosecutor stated during closing arguments that defendant was charged with digitally penetrating B.H., the prosecutor stated that the definition of "sexual penetration" was "any act, however slight, between the sex organ or anus of one person and the sex organ of another person." *Supra* ¶ 14. This error was exacerbated by the fact that the court then instructed the jury with the same incorrect definition of sexual penetration before deliberations commenced. This incorrect definition posed a high risk of confusing the jury. It was especially prejudicial to defendant because the State had presented propensity evidence that defendant committed the uncharged act of placing his penis inside B.H.'s vagina. As the majority recognizes, this uncharged conduct was the only act that met the incorrect definition of sexual penetration given to the jury during closing arguments and the court's initial jury instructions. Accordingly, the jury may have determined that the State established the element of sexual penetration based on this uncharged conduct.

¶ 43 Under the circumstances presented in this case, it was not enough for the circuit court to reinstruct the jury with the correct definition of sexual penetration after it learned that it had given the jury a definition that did not apply to the charged offense. Because of the high risk of confusion to the jury and the risk that the jury would convict defendant based on an uncharged offense, defendant should have been granted a new trial.